842 A.2d 26

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Gary E. DAVIS.

Misc. Docket AG No. 80, Sept. Term, 2002.

Court of Appeals of Maryland.

Feb. 11, 2004.

Melvin Hirsman, Bar Counsel and John C. Broderick, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland.

Gary E. Davis, of Bowie, for respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

RAKER, Judge.

On November 12, 2002, the Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against respondent Gary E. Davis, charging him with violating Maryland Rules of Professional Conduct 1.15 (Safekeeping property)[1] and 8.4(b), (c),

---

* Eldridge, J., now retired, participated in hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Rule 1.15 provides as follows:

"a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises

and (d) (Misconduct).[2] Pursuant to Maryland Rule 16–752(a), we referred the matter to Judge Julia Weatherly of the Circuit Court for Prince George's County to make findings of fact and proposed conclusions of law. Judge Weatherly held an evidentiary hearing on May 7, 2003, and concluded that the Rules of Professional Conduct had not been violated as alleged by Bar Counsel, but that Davis had violated Maryland Code (2002 Repl.Vol., 2003 Cum.Supp.) § 22–103(f) of the Insurance Article.

## I.

Judge Weatherly made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

"1. Respondent was admitted to the Bar of the Court of Appeals on May 25, 1982. In October 1999, Respondent was in private practice specializing in criminal defense representation and personal injury work on behalf of plaintiffs. He testified that he has recently ended his active practice of law.

"2. In October 1997, the Respondent and his then girlfriend, Linda Pelton, established and formed Allegiance Title & Escrow, Ltd. (hereinafter 'Allegiance Title'). The Respondent was the sole owner and President of the company. Ms. Pelton was Vice President. He did not receive a salary but would share any profits earned by the company equally with Ms. Pelton, who operated the business.

---

concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

**2.** Rule 8.4 provides, in pertinent part, as follows:
"It is professional misconduct for a lawyer to:
* * *
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice"

"3. Respondent did not attend or conduct any settlements on behalf of the company. He did contribute to the operation of Allegiance Title by reviewing and signing deeds. He was paid a fee for each deed. He was also a signatory on the bank accounts.

"4. When Allegiance started in 1997, Respondent opened an escrow account and a commercial checking account in the company's name with the Community Bank of Maryland (hereinafter 'Bank').

"5. At the time the escrow account was opened, the Respondent was unaware of the provisions of Chapter 22 of the Insurance Article of the Annotated Code of Maryland. Section 22–103(b) requires all title insurance companies to pool and commingle monies received as the result of a settlement, closing, or other title work if the title insurer believes the deposit will generate interest less than $50 or the cost of administering a separate account. Section 22–103(c) requires the interest in the escrow accounts that contained commingled funds as indicated in (b) above to be paid by the Bank to the Maryland Affordable Housing Trust (MAHT), to help provide affordable housing throughout Maryland. Section 22–103(f) provides that except for the trust money deposited into a MAHT account, trust money may be deposited in any other deposit or investment vehicle specified by the client or beneficial owner, or as agreed to by the beneficial owner and title insurer, or its agent. Those accounts can be an interest bearing account.

"6. In the fall of 1999 Chicago Title conducted an audit of Allegiance Title, and notified the Respondent of the existence of the requirement for all title insurance companies to maintain a MAHT (Maryland Affordable Housing Trust) account. The Respondent then met with an employee of the Bank, who suggested that Allegiance Title should set up a MAHT account and a 'sweep account.'

"7. After a review of Allegiance Title's records, the Bank suggested to the Respondent that the company should deposit funds less than $150,000 into a MAHT account, as these funds

were likely to generate less than $50.00 in interest or the cost of administering a separate account pursuant to Md.Code Ann., Title Ins. § 22–103(b)(c). Deposits of $150,000 or greater were to be deposited into the company's existing escrow account.

"8. Respondent instructed Ms. Pelton to structure Allegiance Title's deposits as described above. However, between November or December 1999 and December 2000, the Bank closed the MAHT account on several occasions because there was no activity in the account. After each such occasion, Allegiance Title instructed the Bank to reopen the account. The Respondent attributed the lack of use of the account [] to difficulties with Allegiance Title's software. Respondent's Exhibit No. 1, Document 2 (Letter from Respondent's attorney, Jan. 22, 2001). It was not until December 2000 that Allegiance Title began to utilize the MAHT account.

"9. Allegiance Title maintained its original escrow account. Deposits in excess of $150,000 were made into this account. Monies held in that account were transferred or swept by the Bank at the end of each banking day into a separate interest bearing account established in the name of the company. The following banking day, the interest earned on the funds held in that separate interest bearing account was transferred to Allegiance Title's commercial checking account. The principal balance was transferred back to the escrow account on the next banking day following the sweep as needed to meet the obligations of the original escrow account. Through the use of the sweep account, Allegiance Title earned interest on funds in its escrow account in the amount of $6,625.10 in 1999 and $19,984.79 in 2000.

"10. There is no evidence that [] Allegiance Title's MAHT account was ever swept or that Allegiance Title retained the interest on that account. "11. The Respondent admits that the beneficial owners were not given notice and their consent was not acquired prior to Allegiance Title depositing trust money into its escrow account and the sweep account.

"12. During the relevant period, the Respondent maintained separate general and escrow accounts for his legal practice. He properly maintained his escrow funds in an IOLTA account as required by Md.Code Ann., Bus. Occ. & Prof. § 10–301 et seq.

## CONCLUSIONS OF LAW

"The Commission does not allege that the Respondent has improperly handled the trust account used in his legal practice. The Commission has filed this disciplinary proceeding against the Respondent, alleging that because he is an attorney, his title insurance company cannot retain the benefit of the interest earned in the 'sweep accounts.' The Petitioner maintains that if the trust funds were not deposited in a MAHT account, these funds should have been dealt with as any other fiduciary funds as defined by the statute. The statute required that those beneficial owners must consent to the deposit of trust money into an account which benefitted the Respondent and the consent needed to be in writing in conformity with COMAR 31.16.03.05. The Complaint alleges that failure to comply with these statutes constitutes a violation of his ethical obligations. They also allege that by retaining the interest in the sweep account he is guilty of theft, and fraudulent misappropriation by a fiduciary.

### I. Rule 8.4—Misconduct

"Rule 8.4 of the Maryland Rules of Professional Conduct provides the following:

'It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.'

"In conjunction with this alleged violation the Petitioner asserts that the Respondent violated two criminal statutes. Petitioner alleges that the Respondent violated Article 27 § 132 of the Annotated Code of Maryland, Fraudulent misappropriation by fiduciaries, and Article 27 § 342 of the Annotated Code of Maryland, Theft. Article 27 § 132, Fraudulent misappropriation by fiduciaries, states:

'If any executor, administrator, guardian, committee, trustee, receiver or any fiduciary shall fraudulently and willfully appropriate to any use and purpose not in the due and lawful execution of his trust, any money or any other thing of value which may come into his hands as such executor, administrator, guardian, committee, trustee, receiver, or in any other fiduciary capacity, or secrete it with a fraudulent intent to appropriate it to such use or purpose, he shall be deemed guilty of embezzlement, and shall be punished upon conviction by imprisonment in the penitentiary for not less than one year nor more than five years.'

"Article 27 § 342 states:

'(a) *Obtaining or exerting unauthorized control.*—A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over property of the owner, and:

(1) Has the purpose of depriving the owner of the property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

(b) *Obtaining control by deception.*—A person commits the offense of theft when he willfully or knowingly uses deception to obtain and does obtain control over property of the owner, and:

(1) Has the purpose of depriving the owner of the property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.'

"In Maryland fraudulent misappropriation by fiduciary, commonly referred to as embezzlement, and theft are specific intent crimes. The Petitioner has the burden to demonstrate that the Respondent specifically intended to deprive owners of their property by retaining the interest on the principal that was generated in the escrow account and swept into Allegiance Title's operating account.

"The Respondent opened up the sweep account and maintained the interest at the invitation of his bank. There is ample evidence and the Petitioner admits title insurance companies regularly maintain these accounts. The establishment of the sweep account is insufficient evidence to prove the *mens rea* of the Respondent. The Court does not find that it is illegal for a title company to maintain a sweep account. The Respondent had no information that would lead him to conclude that it was wrong for his title insurance company to retain the interest on the escrow account.

"Furthermore, there is no evidence to determine what property interest existed for any beneficial owner. There is no evidence upon which the Court could find that any individual beneficial owner was deprived of interest to which they would be entitled. So long as the deposited trust funds were likely to generate less than $50.00 in interest or the cost of administering a separate account, the trust funds should have been deposited into the MAHT account, and the interest provided to a charitable organization. In this situation, the beneficial owners had no right to the interest on the escrowed funds. The Court finds that no fraudulent misappropriation or theft has been proven by clear and convincing evidence.

"Without a finding of theft or fraudulent misappropriation, this Court finds that the Respondent has not violated Rule 8.4 of the Maryland Rules of Professional Conduct. No evidence has been submitted that would substantiate the Petitioner's claims that the Respondent committed a criminal act, engaged in dishonest, fraudulent, deceitful conduct or misrepresentation. In addition, the Petitioner has failed to prove that the Respondent has engaged in conduct that is prejudicial to the administration of justice.

## II. Rule 1.15—Safekeeping property

"Rule 1.15 of the Maryland Rules of Professional Conduct provides the following:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property. (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.'

"The Petitioner asserts that the Respondent has a fiduciary obligation as an agent to safeguard and maintain the clients' or third party funds. Commission asserts that by retaining the interest earned from clients funds in Allegiance Title's sweep account, the Respondent has misused the client funds entrusted to him as a fiduciary for his own personal gain. The issue is whether it is a violation of the Professional Rules of Conduct for an attorney to benefit from the interest on escrowed money in his title insurance business if it is legal for the title insurance to maintain an interest bearing escrow account. The second issue is whether the attorney/owner has a fiduciary obligation to the parties in the real estate settlement. Neither side was able to provide to the Court any clear authority dispositive of the issue. The Petitioner primarily cited cases that dealt with attorneys who conduct real estate settlements as part of their legal practice. The Respondent maintains this is a case of first impression brought by the Commission and there is no case, statute or ethics opinion which would hold that his actions were improper.

"The Respondent primarily relied on an opinion issued by a Bar Counsel Blue Ribbon Inquiry Panel on December 13, 1991. The complaint questioned whether it was misconduct for an attorney, who owned a title insurance company, to deposit escrow funds into an interest bearing account instead of an IOLTA account. The title company retained the interest on the escrowed funds. The Panel concluded that no attorney-client relationship existed between the attorney/owner and the parties to a real estate transaction. BC Docket No. 91–52–14–5 (1991). Respondent's Exhibit No. 4. They also found that there is ample legislative history to conclude that the legislature was aware that many attorneys owned title companies. By refusing to enact the IOTA bill, which would have required that interest on title companies' escrowed accounts be paid to a charitable cause, the legislature did not intend to impose the requirements of IOLTA on attorneys who owned title insurance companies.

"In the instant matter the Respondent is not a real estate attorney, nor does he conduct settlements or closings on

behalf of Allegiance Title. There is no evidence to suggest that the Respondent ever deposited any funds related to a real estate transaction into the bank accounts associated with his law practice. Funds associated with real estate transactions were only deposited into Allegiance Title's accounts. The Respondent's connection with the title company was that of an owner. As an owner he was not required to be an attorney, and he did not perform duties as an owner which required legal skills and performance. His legal involvement with the title business consisted solely of reviewing deeds for which he was paid a fee per deed, and was separate from any remuneration he may have received from the profits of the company as the owner. *See In the Matter of Grimble,* 157 Ariz. 448, 759 P.2d 594 at 598 (1988).

"The Court finds that even though the attorney would not be entitled to retain the interest on the escrowed funds in his law practice, the Respondent does not violate Rule 1.15 by owning a title insurance company, which under the laws of Maryland is entitled to retain the money earned on an interest bearing escrow account.

### III. Annotated Code of Maryland, Business Occupations and Professions Article § 10–306 Misuse of trust money

"Pursuant to Md.Code Ann., Bus. Occ. & Prof. § 10–306: 'A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.' Petitioner alleges that the funds held in the Respondent's title company's escrow account are trust money pursuant to this statute. The Complaint alleges that the Respondent violates this statute because his title insurance company retains interest from escrowed funds in its sweep account. Petitioner concludes that the sweeping of the interest into Allegiance's commercial checking account constitutes misuse of this trust money pursuant to this subsection because he is an attorney.

"This Court finds that Md.Code Ann. Bus. Occ. & Prof. § 10–306 is inapplicable to the Respondent's corporate title company's escrow accounts, because such an account is not an 'Attorney trust account,'as defined in Md.Code Ann., Bus. Occ. & Prof. § 10–301(b). In the instant matter, no money is being entrusted to the Respondent to hold for the benefit of a client or a beneficial owner. Funds were given to Allegiance Title as the result of a closing, settlement or to pay for title work. The Respondent is not a settlement attorney acting on behalf of any of the participants. He is the owner of the title insurance company that is involved in the real estate transactions. There is no evidence to suggest that an attorney-client relationship exists between the Respondent and the parties to the real estate transactions.

**IV. Annotated Code of Maryland, Insurance Article, § 22–103—Deposits of trust money:**

" '(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

(2) "Beneficial owner" means a person, other than the buyer in a real estate transaction, for whose benefit a title insurer or its agent is entrusted to hold trust money.

(3) "Trust money" means a deposit, payment, or other money that a person entrusts to a title insurer or its agent to hold for the benefit of a buyer in a real estate transaction or for a beneficial owner, in connection with an escrow, settlement, closing, or title indemnification.

(b) *Pooling and commingling trust money authorized.*—A title insurer or its agent shall pool and commingle trust money received from clients or beneficial owners in connection with escrows, settlements, closings, or title indemnifications if, in the judgment of the title insurer or its agent, a separate deposit of the trust money would generate interest in an amount not greater than $50 or the cost of administering a separate account.

(c) *Payment of interest to Maryland Affordable Housing Trust.*—At least quarterly, the financial institution in which a commingled account is maintained under this section shall

pay the interest earned on the account, less any service charges of the financial institution, to the Maryland Affordable Housing Trust to enhance the availability of affordable housing throughout the State as provided in Article 83B, § 11–102 of the Code.

(d) *Deposit in specified financial institutions.*—Trust money required to be commingled under subsection (b) of this section in connection with a real estate transaction shall be deposited and maintained until disbursed in accordance with the transaction:

(1) in a financial institution located in the State; or

(2) subject to approval of the Banking Board in the Department of Labor, Licensing, and Regulation, in a financial institution outside the State that complies with the requirements of this subtitle.

(e) *No violation of ethical or legal duties.*—A title insurer or its agent does not violate, and may not be charged by the Commissioner with a violation of, any ethical or legal duties by placing trust money in an account under subsection (b) of this section with the interest paid to the Maryland Affordable Housing Trust under subsection (c) of this section.

(f) *Other deposits of trust money allowed.*—Except for trust money that a title insurer or its agent places in a commingled account under subsections (b) and (c) of this section, and subject to regulations of the Commissioner, trust money in the possession of the title insurer or its agent may be deposited in any other deposit or investment vehicle:

(1) specified by the client or beneficial owner; or

(2) as agreed on by the client or beneficial owner and the title insurer or its agent.'

"The Commission asserts that it is permissible for a Title Company to deposit funds that are not required to be deposited in a MAHT account into a separate account provided that the beneficial owners have knowledge and agree in writing to such an allocation, pursuant to subsection (f) above and CO-MAR 31.16.03.05 (2003). According to the Petitioner, Allegiance Title's retention of the interest earned from their

sweep account violates these rules since the beneficial owners did not have knowledge of the funds allocation, nor had they consented to Allegiance Title's retention of the interest. The Court agrees with this assertion.

"The statute provides two methods to handle trust funds. Trust money can be deposited into a MAHT account. All other deposits of trust funds may be deposited in any other deposit or investment vehicle as specified by the client or beneficial owner or as agreed on by the client or the beneficial owner and the title insurer or its agent. COMAR 31.16.03.05 makes the requirement of obtaining the consent of the parties to the settlement absolutely clear. The Respondent testified that he relied on the advice of the Bank in setting up the MAHT and sweep accounts. He produced the materials given to him by the Bank as an attachment to his proposed findings of fact. The Bank's brochure on the MAHT account includes the following provision:

'Q. MUST INTEREST ON ALL TRUST ACCOUNTS BE GIVEN TO MAHT?

A. No. Individual trust accounts may be put into some other deposit or investment vehicle, if they are expected (a) to earn more than $50 in interest and (2) to earn interest which will exceed the cost of opening a separate interest bearing account, *if the beneficial owner and title insurer, agent or approved attorney both agree.*' (emphasis added)

"The Respondent and Allegiance Title both had notice that the title company was required to obtain the consent of the beneficial owner to deposit money into a non MAHT fund. The Respondent did not dispute that Allegiance Title did not give any notice to the parties to the real estate transactions that the trust money would be placed in an interest bearing account, and that the interest earned would be retained by Allegiance Title.

"The Respondent argues that even if the provisions of this statute have been violated, the enforcement for non-compliance should not come from the Attorney Grievance Commission. Pursuant to COMAR 31.16.03.08 (2003), the Maryland

Insurance Commissioner may impose on a title insurer or title insurance agent any penalty, sanction, or other form of legal enforcement for failure to comply with the provisions of the MAHT account chapter. He asserts that he was not acting as an attorney in establishing the sweep account and should only be held to the same standard of discipline as other owners of title companies.

"Pursuant to Md.Code Ann., Ins. § 2–201(a) and COMAR 31.16.03.08, the Maryland Insurance Commissioner has the authority to discipline Respondent and Allegiance Title for their non-compliance with the MAHT account statutes. However, the Respondent's accountability for these violations of the law does not rest solely with the Commissioner.

"An attorney may engage in other activities separate and apart from his legal profession. He may not, however, abandon his professional ethics when he enters the marketplace without jeopardy to his professional standing. *In re Lurie*, 113 Ariz. 95, 98, 546 P.2d 1126, 1129 (1976). The Oregon Court held in *In Re Heider*, 217 Or. 134, 159, 341 P.2d 1107, 1118 (1959), '. . . there is no cleavage or separation of responsibility for petitioner's acts as a business man and as a lawyer. He may not employ and accept the benefits of such intermingling of activity involving both the law and business without assuming responsibility for both.' The Maryland Courts have held that violations of laws not directly involved in the practice of law may be grounds for disciplinary action. In *Attorney Grievance Comm'n v. Clark*, 363 Md. 169, 767 A.2d 865 (2001) [the Court] held that failure to pay state income taxes was a basis for disciplinary action. The Court stated, 'The lawyer, after all, is intimately associated with the administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above the law,' at 183, citing *Attorney Grievance Comm'n v. Baldwin*, 308 Md. 397, 407–08, 519 A.2d 1291, 1297 (1987).

"The Court finds that the Respondent is in violation of Md. Ann.Code, Ins. Art. § 22–103. The Court notes that no third

party in any real estate transaction handled by Allegiance Title has filed a complaint based on the failure to give notice or obtain consent to the deposit of their funds into the interest bearing account, or that Allegiance Title received interest from the account. There is no evidence that the Respondent intended to defraud third parties. However, as a licensed attorney, the Respondent is responsible for complying with the requirements of the law in both his legal practice and separate business entities."

## II.

### A.

■ This Court has original jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Harris*, 371 Md. 510, 539, 810 A.2d 457, 474–75 (2002). In the exercise of our obligation, we conduct an independent review of the record, accepting the hearing judge's findings of fact unless they are clearly erroneous. *See Attorney Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 763–64 (2002). We review the hearing judge's proposed conclusions of law *de novo*. *See Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

Bar Counsel's petition against respondent rests upon the allegation that respondent violated Maryland Code (2002 Repl. Vol., 2003 Cum.Supp.) § 22–103(f) of the Insurance Article when his title company retained possession of the interest generated by funds in the title company's bank account, which originated from his clients and were to be held in trust by the title company until the funds could be distributed to the proper beneficiaries. If § 22–103(f) was not violated, then whatever merit there might have been in Bar Counsel's remaining allegations dissipates, and respondent cannot be found to have violated the ethical rules for lawyers. *See Attorney Grievance Comm'n v. Lichtenberg*, 379 Md. 335, 842 A.2d 11 (2004). Thus, the inquiry of this Court, as well as the . thrust of both Bar Counsel's and respondent's arguments before this Court, centers on the proper application and

interpretation of § 22–103(f) of the Insurance Article of the Maryland Code.

### B.

Section 22–103(f) of the Insurance Article reads as follows:

"(f) *Other deposits of trust money allowed.*—Except for trust money that a title insurer or its agent places in a commingled account under subsections (b) and (c) of this section, and subject to regulations of the Commissioner, trust money in the possession of the title insurer or its agent may be deposited in any other deposit or investment vehicle:

(1) specified by the client or beneficial owner; or

(2) as agreed on by the client or beneficial owner and the title insurer or its agent."

Section 22–103(a) provides definitions for the terms "beneficial owner" and "trust money":

"(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

(2) 'Beneficial owner' means a person, other than the buyer in a real estate transaction, for whose benefit a title insurer or its agent is entrusted to hold trust money.

(3) 'Trust money' means a deposit, payment, or other money that a person entrusts to a title insurer or its agent to hold for the benefit of a buyer in a real estate transaction or for a beneficial owner, in connection with an escrow, settlement, closing, or title indemnification."

Section 22–103 does not provide a definition for the term "client."

Bar Counsel maintains that in order to satisfy § 22–103(f), respondent was required to receive the consent of the beneficial owners to retain the interest from the funds deposited into the trust account:

"[T]he role of [respondent as] a settlement agent is that of a fiduciary on behalf of numerous *beneficiaries* where the settlement officer comes into possession of funds that are to

be distributed in accordance with the instructions of the lender. . . . It is Petitioner's contention . . . that the short term possession of these funds . . . is not to accrue to the benefit of one party over another and has historically and properly been deposited into a non-interest-bearing account because to do otherwise would be an exercise in control over the funds to the detriment of the *beneficial owner.*"

Petitioner's Exceptions and Recommendation of Sanction, at 5 (emphasis added). Significantly, Bar Counsel's contentions rest upon the fact that the *beneficial owners,* as defined by § 22–103, did not consent to respondent's retention of interest. Although Bar Counsel sometimes mentions the term "clients," in the Petition for Disciplinary Action he does so only in the context of alleging a violation of § 22–103 because respondent did not receive the consent of the beneficial owners, not because respondent failed to receive the consent of his client. Thus, Bar Counsel contends:

"[T]he commingled funds represented by settlement proceeds under common law and Insurance Article § 22–103 preserves the identity of the funds as belonging to the various principals to which a lender's closing instructions refer."

Petitioner's Exceptions and Recommendation of Sanction, at 10. Bar Counsel identifies the "various principals" as the "beneficial owners" of the trust money:

"The principal owner of the funds, commingled by their very nature as settlement funds subject to the instruction of the lender for distribution, is the anticipated recipient of the fiduciary funds as set forth in the lender's closing instructions.

\* \* \*

"[Such ownership] conforms with the statutory definition of 'beneficial owners' as set forth in Insurance Article § 22–103(a)(2)."

*Id.* at 12–13. In sum, Bar Counsel alleges that in order to retain the interest generated by the funds transferred to him

by his client, respondent was required to obtain the consent of intended beneficiaries of that fund. If obtaining such consent is, as respondent argues, impossible, then no one was entitled to the interest, and the funds should have been deposited into a non-interest-bearing account.

Respondent presents arguments to support his position that he did nothing to violate the Rules of Professional Conduct and, specifically, that he did not violate § 22–103 of the Insurance Article. First, respondent argues that the term "trust money" as defined in § 22–103(a)(3) is ambiguous and may not include those funds which are deposited into the title company's escrow account *after* the settlement has already occurred. Respondent describes the settlement process as follows:

"As a practical matter, what really happens is settlement is scheduled for 1pm and the parties arrive at 1pm but the payoff money from the new lender is NOT YET wired into the title company's account or worse, there is no wire and merely a check which the title company's bank has to process in spite of the fact that checks have already been issued on the as yet non-negotiated payoff money.

\* \* \*

What [Bar Counsel] fails to comprehend is that none of the trust monies are ever in the bank for an appreciable period of time and are almost always, if not ALWAYS, deposited after the monies have been properly distributed and the trustee obligations of the title company have been fulfilled and fully discharged, thereby rendering the 'trust' terminated and moot."

Respondent's Proposed Findings of Fact and Conclusions of Law, at Part II.

## C.

This case presents the same issue as was presented in *Attorney Grievance Commission v. Lichtenberg*, 379 Md. 335, 842 A.2d 11 (2004). The facts in the case at bar and *Lichten-*

*berg* are, in all relevant aspects, similar.[3]  Here, as in *Lichtenberg,* Bar Counsel essentially complains that respondent did not get the consent of the "beneficial owners" before he retained the interest in the accounts.  The gravamen of Bar Counsel's complaint is that respondent failed to secure the consent of the beneficial owners as defined by statute, and not that he failed to secure the consent of any client.

■  We decline to construe the statute for the same reasons stated in *Lichtenberg.*  For the reasons stated therein, we do not decide whether respondent violated the Insurance Article and therefore will dismiss Bar Counsel's petition.

In *Lichtenberg,* we emphasized that § 22–103(f) previously had not been interpreted by either this Court or the Insurance Administration and that this case had come to us through our supervisory capacity regulating the practice of law and the ethical behavior of attorneys, not through the usual judicial channels of appellate review.  We elected not to construe the Insurance Article without input from the agency who was not a party to the case and had declined Bar Counsel's invitation to clarify the issue.  We noted that we discipline attorneys for violation of Rule 8.4 when it is clear that a law has been violated, even if there is no criminal conviction, but not when such a violation is unclear.  That reasoning applies equally here.

Indeed, in some ways, this case accentuates the complexity of interpreting § 22–103(f)—even more so than *Lichtenberg*— and the reasons for which it would be better to have the Insurance Administration decide the propriety of respondent's actions or, at minimum, be involved in the litigation that

---

**3.**  There is one factual difference between the instant case and *Lichtenberg.*  In *Lichtenberg,* the hearing court found that the title company had obtained the consent of the title company's client, though not of the beneficial owners.  The record in the instant case does not reflect that Davis secured the consent of his client.  To Bar Counsel, this is a distinction without a difference because it is Bar Counsel's position that the statute requires the consent of the beneficial interest holders, and it is undisputed in the instant case that the beneficial owners did not consent.

decides the proper interpretation of the statute it administers. For instance, we were told at oral argument, and it was undisputed by Bar Counsel, that it is the general, commonplace practice of banks to offer sweep accounts to title companies; that banks receive a large portion of the interest generated overnight as compensation for their performance of the sweep; that only a portion of the aggregate funds in the account from all of the clients of the title company are swept each night; and that it therefore is impossible to identify whose interest was generated at what portion. Significantly, it is not even certain that § 22–103(f) applies when, for example, a title company receives a check from the client and simply pays out of its own funds the amount necessary to settle the real estate transaction *before* the client's check has been cashed. After disbursing the monies, it is unclear whether the fiduciary duty to the client exists any longer with respect to the monies deposited into the title company's trust account sometime after the settlement is finished. Indeed, it is also unclear whether the monies disbursed are ever in the account for an appreciable period prior to the disbursement, at which point the fiduciary obligations arguably are discharged.

Our point is not to argue respondent's case, nor do we intimate that we are persuaded by this line of argument. We merely wish to illustrate the complexity of interpreting § 22–103(f). This case differs from those cases in which we proceeded with disciplinary actions in the absence of a criminal conviction where, for example, the lawyer has failed to file or pay income taxes. There the violation is clear but the prosecution is uninitiated. Here, not only is the violation vague and unsubstantiated, but the presence and the advice of the regulating authority, an agency charged with protecting the public, is strikingly absent from any part of these proceedings. In this respect, this case is no different from *Lichtenberg* and will be dismissed.

Bar Counsel's exceptions are overruled, and there being no violation of the Rules of Professional Conduct, the petition is hereby dismissed.

*PETITION FOR DISCIPLINARY ACTION DISMISSED. COSTS TO BE PAID BY THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.*

Dissenting Opinion by WILNER, Judge, in which HARRELL, Judge, joins.

At the direction of the Attorney Grievance Commission, Bar Counsel filed a petition against respondent, Gary Davis, charging him of having violated Rules 1.15 and 8.4(b), (c), and (d) of the Maryland Rules of Professional Conduct. The alleged violations arose from the manner in which Davis, in his capacity as owner and president of a title insurance company, handled certain funds entrusted to the company in the course of real estate settlements. In particular, Bar Counsel alleged that Davis, through his company, had retained interest earned on trust funds in violation of Maryland Code, § 10–306 of the Business Occupations and Professions (BOP) Article and § 22–103 of the Insurance Article.

The Court holds, and I agree, that, because the funds in question were not received by Davis in his capacity as a lawyer, there was no violation of BOP, § 10–306 or Rule 1.15. I part company with the Court, however, in its decision to avoid construing, and thus finding a violation of, § 22–103 of the Insurance Article—a violation that is clear beyond cavil—and, by reason of that violation, a violation of Rule 8.4(d) as well.

Title insurance companies are subject to both statutory and administrative regulation. *See* Insurance Article, §§ 11–401–11–409, providing for the regulation of rates and policies and requiring that certain information be disclosed to the Insurance Commissioner, and § 22–102, requiring the sending of certain notices in connection with real estate settlements. Section 22–103 contains requirements and prohibitions with respect to money received in trust—money that "a person entrusts to a title insurer or its agent to hold for the benefit of a buyer in a real estate transaction or for a beneficial owner, in connection with an escrow, settlement, closing, or title

indemnification." § 22–103(a)(3). Section 22–103(b) requires title insurers and their agents to pool and commingle trust money received from clients or beneficial owners in connection with escrows, settlements, closings, or title indemnifications if, in the judgment of the insurer or agent, a separate deposit of the trust money would not generate interest in an amount greater than $50 or the cost of administering a separate account. Under § 22–103(c), the interest earned from such commingled funds, less any service charges, must be paid quarterly to the Maryland Affordable Housing Trust. Those provisions are the equivalent for title insurers of the IOLTA arrangement applicable to lawyers' trust accounts. *See* BOP, § 10–303 and Maryland Rule 16–608.

Section 22–103(f)—the provision most applicable here—provides that, except for trust money required by subsections (b) and (c) to be commingled, trust money in the possession of a title insurer or agent "may be deposited in any other deposit or investment vehicle: (1) specified by the client or beneficial owner; or (2) as agreed on by the client or beneficial owner and the title insurer or its agent." Unlike the situation in *Attorney Grievance Commission v. Lichtenberg*, 379 Md. 335, 842 A.2d 11 (2003), which we consolidated with this case, there is no doubt whatever that, by acquiescing in the "sweeping" scheme suggested by his bank, Davis violated § 22–103(f).

As owner and president (and thus as agent) of a title insurer, he deposited trust funds received for the benefit of clients in an account, other than a commingled account permitted by subsections (b) and (c), that had been neither specified nor agreed to by the client or by any possible beneficial owner of the funds, and the clear and intended effect of that arrangement was that, without the consent of his clients or any beneficial owners of the trust funds, his company retained all of the net interest earned on those accounts. There is no conceivable basis upon which he was entitled to divert the interest on trust funds received for the benefit of clients to his own use or that of his company. Indeed, as the "sweeping" scheme was described to us, it appears that more than the

diversion of interest was involved: each night, the principal balances in the accounts—the actual trust funds—were automatically diverted to his own use and thus, at least for the night, misappropriated.

The record. in this case establishes that the misappropriation was with the actual intent of depriving the clients of the interest earned on trust funds deposited for their direct or indirect benefit, and, even if that conduct was the product of negligence, of Davis being unaware that it was unlawful, it nonetheless is, indeed, unlawful. When a lawyer, even when acting in another capacity, takes money that does not belong to him and that, under the law, he has no right to take, he commits conduct prejudicial to the administration of justice, and thus violates Rule 8.4(d).

The Court—as far as I can tell for the first time in its history—has chosen to ignore both a clear violation of the Rules of Professional Conduct and the Court's ultimate responsibility for enforcing those rules by deliberately refusing to address the statutory basis for those violations.

The Court admits that "the inquiry of this Court, as well as the thrust of both Bar Counsel's and respondent's arguments before this Court, centers on the proper application and interpretation of § 22–103(f) of the Insurance Article of the Maryland Code," but then declines to construe the statute on the ground that the necessary issue should not be addressed unless the Insurance Commissioner is a party to the litigation, which effectively means it can never be addressed in an attorney disciplinary proceeding. Such a deferral is unprecedented, extraordinary, and wholly inappropriate.

In *Attorney General v. Waldron,* 289 Md. 683, 692, 426 A.2d 929, 934 (1981), we held, explicitly, that "the regulation of the practice of law, the admittance of new members to the bar, and the discipline of attorneys who fail to conform to the established standards governing their professional conduct are essentially judicial in nature and, accordingly, are encompassed in the constitutional grant of judicial authority to the courts of this State." Quoting from *Pub. Serv. Comm'n v.*

*Hahn Transp., Inc.,* 253 Md. 571, 583, 253 A.2d 845, 852 (1969), we added that "[u]nder our constitutional system of separation of powers, the determination of what constitutes the practice of law and the regulation of the practice and of its practitioners is, and essentially and appropriately should be, a function of the judicial branch of government." *Attorney General v. Waldron,* 289 Md. at 692, 426 A.2d at 935. Over and over and over again, in nearly every attorney grievance case, we have emphasized that, in these special proceedings, this Court has "original *and complete* jurisdiction." *Attorney Grievance v. Smith,* 376 Md. 202, 229, 829 A.2d 567, 583 (2003); *Attorney Grievance v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002); *Attorney Grievance v. Snyder,* 368 Md. 242, 253, 793 A.2d 515, 521 (2002); *Attorney Griev. Comm. v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997); *Attorney Griev. Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995) (Emphasis added).

That jurisdiction, in this case, cannot be implemented without construing § 22–103(f), and yet the Court declines to address the statute, preferring either to allow the Insurance Commissioner to deal with the issue or to wait until a case arises in which the Commissioner is a party. Such a deferral appears to me to be applying the doctrine of primary jurisdiction, disguised as something else, and it is flat-out inconsistent with the notion that this Court has a Constitutionally-based "original and complete" jurisdiction over attorney discipline matters. If, as we have held, our jurisdiction is "complete," it cannot be regarded as shared with any administrative agency. As *Waldron* makes clear, this is not an area in which the Legislature is even competent to allocate jurisdiction between the courts and executive agencies. This is not a situation in which a court and an administrative agency have concurrent jurisdiction over the same matter. This is not a situation in which Bar Counsel could have obtained any relief from the Insurance Commissioner. The Commissioner could, if he chose to do so, take some action against the title insurance company, or Davis as its agent, for violating the insurance law, but he would be powerless to determine whether Davis had

violated a Rule of Professional Conduct, much less to do anything about such a violation.[1]

The effect of the Court's deferral in this case is nothing less than an impermissible delegation of what we have already held to be a judicial function to an executive agency that has no authority in the matter.[2] The exercise of our "original and complete" jurisdiction may, from time to time, require us to construe a statute over which an administrative agency has jurisdiction, and we are entirely competent to do so. *See Attorney Griev. Comm'n v. Eisenstein*, 333 Md. 464, 635 A.2d 1327 (1994) (disciplining attorney for taking fees in excess of those allowed under Longshore and Harbor Workers' Compensation Act).

---

1. Deferral to the Insurance Commissioner is particularly pointless in this case where, as the Majority acknowledges, the Insurance Administration "declined Bar Counsel's invitation to clarify" the Administration's interpretation of Section 22–103(f) under the facts presented. Why should the Court shirk its responsibility for the regulation of attorney conduct in order to defer to an executive branch agency that apparently has little or no interest in weighing in on a related subject? Having declined the opportunity to express its expert opinion here, one could infer logically that the agency has nothing to add and instead defers to the Court's traditional role in interpreting legislative enactments.

2. It is questionable whether the Insurance Commissioner even has primary jurisdiction over ordinary civil claims that arise from an alleged violation of § 22–103, but he certainly cannot have primary jurisdiction over an attorney grievance matter based on that statute. I am not at all sure that, if one of Davis's clients had filed a civil action in court to recover interest that accrued on funds held in trust for him by Davis, we would have insisted that the client turn first to the Insurance Commissioner for relief. *See Zappone v. Liberty Life, supra*, 349 Md. 45, 706 A.2d 1060. Although the Commissioner has general authority to hold hearings, discipline companies and agents subject to his jurisdiction, and provide certain forms of relief to persons who suffer loss because of violations of the Insurance Code by entities or persons subject to regulation, there is no administrative procedure attached specifically to § 22–103, and there is nothing in that statute that evidences an intent by the Legislature that claims under that statute be submitted first to the Insurance Commissioner. The statute is not an interconnected part of an overall regulatory scheme, for which some administrative expertise exists. It is a stand-alone statute regulating trust accounts, and it does not appear to me that any special administrative expertise is required in interpreting it.

I would find that, as a title insurance agent, Davis violated the statute and, by doing so, also, as a lawyer, violated Rule 8.4(d). Upon that finding, I would then address the question of what sanction to impose or, indeed, on this record, whether to impose any sanction.

Judge HARRELL has authorized me to state that he joins in this dissenting opinion.

Dissenting Opinion by BELL, Chief Judge.

For the reasons enunciated in the dissenting opinion of Judge Wilner, I respectfully dissent. Unlike Judge Wilner and Judge Harrell, however, I believe that the determination of the culpability of Gary Davis, the respondent, with respect to all of the charged violations must, and should, await this Court's construction of Maryland Code (1996, 2002 Replacement Volume) § 22–103 of the Insurance Article.