842 A.2d 11

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Myles Louis LICHTENBERG.**

**Misc. AG No. 67, Sept. Term, 2002.**

Court of Appeals of Maryland.

Feb. 11, 2004.

**336**

Melvin Hirshman, Bar Counsel and John C. Broderick, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Gregg L. Bernstein, Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

On October 12, 2002, the Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against respondent Myles Louis Lichtenberg, charging him with violating Maryland Rules of Professional Conduct 1.15 (Safekeeping property) [1] and 8.4(b), (c),

---

* Eldridge, J., now retired, participated in hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Rule 1.15 provides as follows:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by

and (d) (Misconduct)[2]; Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.) Article 27, § 132 (Fraudulent misappropriation by fiduciaries); Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.) Article 27, § 342 (Theft); Maryland Code (1989, 2000 Repl. Vol., 2003 Cum.Supp.) § 10–306 of the Business Occupations and Professions Article (Misuse of trust money); and Maryland Code (2002 Repl. Vol., 2003 Cum. Supp.) § 22–103 of the Insurance Article (Deposits of trust money).

Pursuant to Maryland Rule 16–752(a), we referred the matter to Judge Christian M. Kahl of the Circuit Court for Baltimore County to make findings of fact and proposed conclusions of law. Judge Kahl held an evidentiary hearing on May 12, 2003, after which he concluded that neither the Rules of Professional Conduct nor the other provisions of the Maryland Code had been violated as alleged by Bar Counsel. We shall dismiss the petition for the reasons stated herein.

---

law or by agreement with the client, a lawyer shall promptly deliver to the client or third·person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

2. Rule 8.4 provides, in pertinent part, as follows:
"It is professional misconduct for a lawyer to:
\* \* \*
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice"

## I.

The following is quoted from the parties' joint stipulation of facts, which is referenced by the hearing court's proposed findings of fact and conclusions of law:

"1. Respondent, Myles Lichtenberg ('Lichtenberg'), is an attorney who has been licensed to practice law in Maryland since June 17, 1987. Mr. Lichtenberg received a joint J.D. and Masters of Business Administration Degree from the University of Baltimore Law School in May 1986.

"2. Since 1980 through the present, Lichtenberg has been employed in the real estate settlement and title business, working as a title agent. Lichtenberg's professional career has been almost exclusively devoted to the business of conducting real estate settlements as a title agent. He has never been actively involved in the practice of law with the exception of the representation of clients in a very few isolated matters. In conjunction with his separate law practice, Lichtenberg maintains a required Interest on Lawyer Trust Account (IOLTA) and has complied with all IOLTA reporting requirements with respect to this account.

"3. Pursuant to Md.Code Ann., Insur. § 10–125(b), a title agent who conducts a real estate settlement does not have to be an attorney; and thus, the providing of real estate settlement services does not constitute the practice of law.

"4. From June 1995 through June 30, 1999, Mr. Lichtenberg was the President and 100% shareholder of a real estate title company, Guaranteed Title and Escrow ('GTE'), which was licensed and regulated by the Maryland Insurance Administration. In addition, Mr. Lichtenberg is personally licensed by the Maryland Insurance Administration as a title insurance agent.

"5. During its operation, GTE conducted real estate settlement closings and issued title insurance policies as agent for various title insurance companies. In 1999, GTE had two offices in Owings Mills, Maryland, and Landover, Maryland, with approximately twenty employees, some of

whom were licensed to conduct real estate settlements. Mr. Lichtenberg directed the operations of the company, and maintained an office at the Owings Mills location. He employed an office manager to manage the Landover location. Both Lichtenberg and his employees conducted real estate closings at the offices, averaging approximately 160 closings per month in 1999.

"6. With regard to the transaction that forms the basis for Bar Counsel's Petition, in 1999, George Gigioli sought to refinance the mortgage on his home located at 4603 Mercury Drive, Rockville, Maryland, through a mortgage he had obtained from Citywide Mortgage Corporation ('Citywide'). Mr. Gigioli was referred to GTE by Citywide to perform the title and settlement services. GTE Landover office employees worked with Mr. Gigioli, Citywide, and other persons (i.e., prior lenders and creditors, the title abstractor, insurers, taxing authorities, etc.) to prepare the transaction for settlement.

"7. Lichtenberg had no personal involvement in the preparation of any of the settlement documents for this transaction, including the calculation of the pay-off amount owed to the prior lender, Option One, or the settlement itself.

"8. Consistent with GTE's usual and customary practices, a settlement file was maintained for the transaction. The parties have stipulated to the authenticity and admissibility of a copy of the complete GTE Landover office file, # 99–55–577, bates labeled GTE INC–0001 through GTE INC–0197, and made a part of this proceeding as Joint Exhibit 1.

"9. As part of the preparation for settlement, GTE obtained pay-off information from Mr. Gigioli's then-existing lender, Option One. Option One calculated the amount Mr. Gigioli owed on his mortgage as of April 14, 1999, and provided a formula for calculating additional interest charges if the settlement was held at a later date. *See* GTE INC–00028.

"10. Settlement took place on Thursday, April 29, 1999 at Mr. Gigioli's house. Prior to settlement, a GTE employee had prepared the settlement sheet (commonly referred to as the 'HUD–1') for closing, and mistakenly reported an incorrect amount on the settlement sheet to collect from Mr. Gigioli's new lender, Citywide, to pay-off his prior mortgage with Option One. *See* GTE INC 0084–0086 at line 105.

"11. At settlement, Mr. Gigioli executed the necessary paperwork to complete the transaction, including a separate document entitled, 'HUD Addendum 3, Acknowledgment and Receipt of Settlement Statement' ('Addendum'). *See* GTE INC 0087.

"12. Paragraph five of the Addendum signed by Mr. Gigioli states:

> Guaranteed Title, [in] its sole discretion, hereby expressly reserves the right to deposit any amounts held by it in escrow in any interest bearing account in a federally insured institution and to credit any interest so earned to its own account as additional compensation for its service as Settlement Agent in this transaction.

*See* GTE INC 0087.

"13. Paragraph 6 of the Addendum signed by Mr. Gigioli provides that:

> Receipt is hereby acknowledged of Pages 1 and 2 of the Settlement Statement and Truth in Lending Disclosure Statements covering the above captioned property and same is hereby approved; and is subject to further adjustment between the parties in the event of errors in calculations and/or omissions, and authorization is given to the Guaranteed Title to advance any necessary funds in the event of errors and/or omissions and to make distribution and payments in accordance therewith. If, after reasonable demand, monies remain unpaid pursuant to this paragraph, and legal action to collect the same is initiated, the responsible party hereto agrees to pay unto Guaranteed Title and any all costs of collection including but not limited to court

costs, incidental and/or consequential damages and/or reasonable attorney's fees arising out of the collection of monies due and owing.

*See* GTE INC 0087.

"14. Mr. Gigioli's transaction was a refinancing, and therefore, he was allowed three business days to rescind. *See* GTE INC–0083. Upon the expiration of the three-day period on Wednesday, May 5, 1999, GTE received the new mortgage funds from Citywide, which were wired into GTE's interest bearing escrow account at Allfirst Bank pursuant to Paragraph 5 of the Addendum. The same day, GTE forwarded funds to pay-off the prior mortgage held by Option One, as well as all the parties entitled to be paid from the settlement proceeds of the transaction. *See, e.g.,* GTE INC–0204.

"15. Because of the GTE employee's prior erroneous calculation of the payoff amount, GTE forwarded an insufficient amount to Option One. The amount of the shortfall as of the May 6, 1999 date was $1452.31. *See* GTE INC–0206.

"16. On or about May 6, 1999, Option One advised GTE that they had not credited the payment to Mr. Gigioli's account, and therefore, they were not releasing their mortgage on the property. Over the next two weeks, a series of attempts were made by GTE employees to determine the source of the problem with Option One and correct it. At some point during this period, Mr. Lichtenberg was made aware of the pay-off discrepancy by GTE employees. GTE later learned of its employee's miscalculation of the pay-off amount, and on May 19, 1999, GTE advanced from its operating account the additional funds (which now totaled $1,856.30 as a result of further interest charges) needed by Option One to complete the pay-off and release its mortgage on the property. *See* GTE INC–0205 and 0211.

"17. GTE later attempted to collect the $1856.30 it had advanced on behalf of Mr. Gigioli to pay-off his mortgage with Option One. At least two letters were sent to Mr. Gigioli by Mr. Lichtenberg regarding this issue. On February 8, 2000, Mr. Lichtenberg wrote Mr. Gigioli and sought

repayment. *See* GTE INC–0199. After speaking with Mr. Gigioli, on February 18, 2000, Mr. Lichtenberg wrote again and reduced his demand for repayment to $1452.31; the amount due Option One by Mr. Gigioli as of May 6, 1999, when Option One first advised GTE that it would not accept the payment. *See* GTE INC–0206.

"18. Ultimately, GTE was forced to file suit in the District Court for Montgomery County seeking repayment of the monies it advanced in Mr. Gigioli's behalf. On January 24, 2001, the Court awarded judgment to GTE.

"19. On January 8, 2001, Mr. Gigioli's attorney in the District Court case filed a complaint with the Attorney Grievance Commission, alleging that, paragraph 5 and 6 of the Addendum violated certain provisions of the Maryland Rules of Professional Responsibility and Rules of Professional Conduct.

"20. On October 16, 2001, Bar Counsel filed a statement of charges against Lichtenberg, alleging possible violations of Maryland Rules of Professional Conduct 1.15 and 8.4(b), (c), and (d), solely as it related to GTE's retention of interest derived from settlement funds, and the matter was referred to a Peer Review Committee for consideration pursuant to Maryland Rule 16–741.

"21. A hearing was held before the Peer Review Committee on January 17, 2002. At the conclusion of the hearing, the Peer Review Committee issued its recommendation to the Attorney Grievance Commission that the statement of charges be dismissed against Lichtenberg pursuant to Maryland Rule 16–743(e).

"22. On March 20, 2002, the Attorney Grievance Commission rejected the Committee's recommendation, and directed Bar Counsel to file a Petition for Disciplinary Action.

"23. On October 4, 2002, Bar Counsel filed its Petition for Disciplinary Action. On January 10, 2003, Bar Counsel filed the instant Amended Petition. The misconduct alleged against Lichtenberg in the Petition is solely related to

GTE's retention of interest derived from the settlement funds in Mr. Gigioli's refinancing transaction.

"24. Section 22–103(b) of the Insurance Article, Md. Ann.Code, requires a title insurer or its agents to pool settlement/trust funds from its clients that otherwise would not generate interest of more than $50.00, or an insufficient amount to cover the cost of maintaining a separate account for the proceeds of each individual settlement:

> (b) *Pooling and commingling trust money authorized.*—A title insurer or its agent shall pool and commingle trust money received from clients or beneficial owners in connection with escrows, settlements, closings, or title indemnifications if, in the judgment of the title insurer or its agent, a separate deposit of the trust money would generate interest in an amount not greater than $50 or the cost of administering a separate account.

Insurance Article § 22–103(b). *See* Joint Exhibit 2 (attached hereto). Section 22–103(c) provides that, the interest earned on funds deposited into this account shall be paid to the Maryland Affordable Housing Trust ('MAHT').

"25. Section 22–103(f) provides for the procedures to be followed for settlement proceeds (or 'trust money') that are expected to generate interest in excess of $50.00:

> (f) *Other deposits of trust money allowed.*—Except for trust money that a title insurer or its agent places in a commingled account under subsections (b) and (c) of this section, and subject to the regulations of the Commissioner, trust money in the possession of the title insurer or its agent may be deposited in any other deposit or investment vehicle:
>
> (1) specified by the client or beneficial owner; or
>
> (2) as agreed on by the client or beneficial owner and the title insurer or its agent.

Section 22–103(f). *See* Exhibit 2.

"26. The term 'client' referenced in Section 22–103(f) is not defined in the statute; however, COMAR 31.16.03.05

interprets the term as referring to the buyer of the home, or in this case, the person refinancing his mortgage. *See* Joint Exhibit 3 attached. A 'beneficial owner' is defined in the statute as, 'a person, other than the buyer in a real estate transaction, for whose benefit a title insurer or its agent is entrusted to hold trust money.' Section 22–103(a). Thus, beneficial owner includes any local and state taxing authorities, utility companies, real estate agents, condominium associations, or any other third-parties who may be paid from real estate settlement trust funds.

"27. GTE maintained both a MAHT account for settlement proceeds generating less than $50.00 in interest, and a non-MAHT account for proceeds generating more than $50.00 in interest.

"28. In order to assist title companies in complying with Insurance Article Section 22–103, MAHT publishes a table on its website for title agents to use as a guide in determining when settlement proceeds are held in sufficient amount and for a sufficient period of time to generate interest in excess of $50.00. *See* Exhibit 4 attached. MAHT also requires an annual report to be filed by title companies detailing the amount of interest earned on both MAHT accounts and non-MAHT accounts. *See* Exhibit 5 attached.

"29. Pursuant to Paragraph 5 of the Addendum, GTE retained all of the interest earned on the settlement proceeds received by Citywide in the Gigioli transaction, which were maintained in GTE's non-MAHT escrow account. The amount of the interest earned was more than $50.00.

"30. Lichtenberg believed that GTE was complying with all applicable laws and regulations, as well as the MAHT guidelines, in establishing the procedures at GTE for the creation and use of both a MAHT and a non-MAHT account. Lichtenberg is aware from his membership in the Maryland Land and Title Association that it is common in the title industry for title companies to have customers sign agreements similar to the Addendum in this case authorizing the title company to retain the interest in excess of $50.00 on settlement funds as additional compensation for

their settlement services. *See, e.g.,* Joint Exhibit 6 (1991 Report and Recommendation of Inquiry Panel. BC Docket # 91–52–14–5).

"31. The total amount of interest earned by GTE in 1999 on all settlement funds held in GTE's non-MAHT accounts was $33,436.55.

"32. In December 1991, and prior to the enactment of the current version of Section 22–103, a prior Inquiry Panel considered whether a lawyer could retain interest earned on settlement proceeds in his capacity as the owner of a title company, notwithstanding any requirements of Interest on Lawyer Trust Accounts ('IOLTA') rules. (Opinion attached as Exhibit 6). The Inquiry Panel concluded that the retention of such interest by a lawyer in a non-IOLTA account did not violate any rules of professional conduct.

"33. On February 12, 1992, in response to a letter from multiple requesting attorneys, Bar Counsel, Melvin Hirshman, reiterated the holding of the 1991 Inquiry Panel and its findings. Stating that:

Section 10–301 *et. seq.* of BOP [Business, Occupations, Professionals Article, Md. Ann.Code] does not apply to real estate settlement practices of an attorney who owns a corporate title company, since no attorney/client relationship exists between Respondent (or the other attorney-employees of the title company) and the parties to the real estate transaction;

The BU Rules are similarly inapplicable to a corporate title company escrow account, because such an account is not an 'Attorney Trust Account,' as defined in Rule BU2.c. of the Maryland Rules of Procedure. The Respondent clearly complies with IOLTA requirements by virtue of the IOLTA account related to his separate law practice;

The Respondent has not violated any of the Maryland Rules of Professional Conduct of which he is subject as a licensed Maryland attorney, solely by virtue of his

practice of retaining escrow account interest through his corporate title company;

And Attorneys who choose to conduct real estate closings as part of their law practice, rather than through an independent title company, *must* maintain their settlement escrow accounts as IOLTA accounts.

*See* Exhibit 7 (February 12, 1992 letter from Bar Counsel Melvin Hirshman).

"34. Legislation was introduced in the Maryland Senate around this same time to create the Maryland Affordable Housing Trust. This legislation would eventually become Insurance Article section 22–103. Prior to the passage of this legislation, on May 5, 1992, the Maryland Attorney General, in a letter to then Governor William Donald Schaefer, stated his opinion that the proposed legislation (then titled Senate Bill 594) 'does not work [as] an unconstitutional taking' by the Maryland Affordable Housing Trust. *See* Exhibit 7 (attached).

"35. As it applies to the Addendum referenced in at paragraph 11 above, and pertains to the particular language contained therein as set forth in paragraph 12 above, CO-MAR 31.16.03.05 ('Separate Accounts') is attached as Joint Exhibit 8."

After the evidentiary hearing of May 12, the hearing court made the following conclusions of law (footnotes omitted):

"For the following reasons, the Court finds that, based on these facts, Petitioner has failed to sustain its burden of proof by clear and convincing evidence that Respondent has engaged in any misconduct as alleged by Petitioner. The facts demonstrate that Respondent complied with the applicable statutes governing the title company industry in which he was engaged, specifically, Insurance Article § 22–103. Accordingly, this Court finds that Respondent has not violated any of the Rules of Professional Conduct, or any applicable statutes or regulations alleged by Petitioner to support the allegations in the Amended Petition.

"First, Respondent committed no criminal violation and Petitioner's contentions in this regard are completely unfounded. There is simply no evidence of any fraudulent and willful intent 'to appropriate to any use and purpose not in the due and lawful execution of his trust any money' in his care as a fiduciary as is required for a violation of Article 27 § 132 of Md. Ann.Code. Nor is there any evidence that Respondent 'willfully or knowingly obtained control which is unauthorized .... over property of the owner ....' as is required for a violation of Article 27 § 342 of Md. Ann.Code. The facts establish that Respondent honestly believed he was complying with all applicable laws and regulations, *see* ¶ 30, and had disclosed to Mr. Gigioli that GTE would retain the interest on the settlement funds pursuant to the Addendum Agreement Mr. Gigioli signed. *See* Joint Exhibit 1 (GTE INC 0087). Accordingly, there is no violation of Maryland Rule of Professional Conduct 8.4(b) and 8.4(c), because there was no evidence of a 'criminal act that reflects adversely on the lawyer's honesty,' nor any 'conduct involving dishonesty, fraud, deceit, or misrepresentation.' Similarly, Respondent has not violated Maryland Rule of Professional Conduct 8.4(d) and its prohibition against 'conduct that is prejudicial to the administration of justice' inasmuch as Respondent's good faith compliance with the applicable insurance statute cannot amount to conduct that is prejudicial to the administration of justice.

"Second, there is no evidence of a statutory violation of Business Occupations and Professions Article, § 10–306. Section 10–306 provides that a lawyer 'may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.' In this case, the trust funds for Mr. Gigioli's settlement were, in fact, used by GTE for that settlement and to pay off all the required parties. Indeed, the buyer and every beneficial owner in the transaction were paid exactly the amount they were owed. The interest earned on these funds was retained by GTE pursuant to its separate Agreement with the 'buyer,' Mr. Gigioli, as allowed by the applicable insurance statute.

"Third, there is no evidence that Respondent violated Maryland Rule of Professional Conduct 1.15 regarding the safekeeping of a client's property. Sections (a) and (c) of Rule 1.15 apply to client property *in connection with a representation* by the lawyer. Here, there is no lawyer/client relationship with the buyer, especially when Respondent did not even conduct the settlement transaction at issue. Further, the parties have agreed that the providing of real estate settlement services does not constitute the practice of law, *see* ¶ 3, an identical position articulated by Bar Counsel in an earlier letter to requesting attorneys and placed into the record of this case. *See* Joint Exhibit 7 (February 12, 1992 letter from Melvin Hirshman) and ¶ 33 above.

"While Rule 1.15(b) may impart duties on a lawyer beyond the lawyer/client relationship, the rule merely requires the lawyer to promptly deliver to the client or third person any funds that the client or third person is 'entitled to receive,' or as is 'otherwise permitted by law or by agreement with the client. . . .' Petitioner here has failed to demonstrate that the buyer, or any of the other beneficial owners in the transaction were entitled to receive any of the interest earned on the settlement funds. Indeed, GTE had obtained the signature of the buyer on GTE's separate Addendum Agreement indicating GTE's intention to retain the interest on the settlement funds. *See* Joint Exhibit 1 (GTE INC 0087). The evidence establishes that Respondent delivered to the client and all applicable third parties all funds due them.

"Petitioner's remaining allegations of misconduct turn on its interpretation of Insurance Article § 22–103. Section 22–103(b) of the Insurance Article, Md. Ann.Code, requires a title insurer or its agents to pool settlement/trust funds from its clients that otherwise would not generate interest of more than $50:

> (b) *Pooling and commingling trust money authorized.*—A title insurer or its agent shall pool and commingle trust money received from clients or beneficial

owners in connection with escrows, settlements, closings, or title indemnifications *if,* in the judgment of the title insurer or its agent, a separate deposit of the trust money would generate interest in an amount not greater than $50 or the cost of administering a separate account.

Insurance Article § 22–103(b) (emphasis added). Further, section 22–103(c) provides that, the interest earned on funds deposited into this account shall be paid to 'the Maryland Affordable Housing Trust [MAHT] to enhance the availability of affordable housing throughout the state . . . .'

"Section 22–103(f) describes the procedures used for settlement proceeds (or 'trust money') that is expected to generate interest in excess of $50.00, which may be retained by the title agent in a non-MAHT account:

(f) *Other deposits of trust money allowed.*—Except for trust money that a title insurer or its agent places in a commingled account under subsections (b) and (c) of this section, and subject to the regulations of the Commissioner, trust money in the possession of the title insurer or its agent may be deposited in any other deposit or investment vehicle:

(1) specifically by the client *or* beneficial owner, or

(2) as agreed on by the client *or* beneficial owner and the title insurer or its agent.

Section 22–103(f) (emphasis added). The 'client' referenced in the statute refers to the buyer of the home, or in this case, the person refinancing his mortgage. A 'beneficial owner' is defined in the statute as 'a person, other than the buyer in a real estate transaction, for whose benefit a title insurer or its agent is entrusted to hold trust money.' Section 22–103(a). Conceivably, this could include all local and state taxing authorities, utility companies, real estate agents, condominium associations, and any other parties paid out of real estate settlement trust funds.

"In the instant case, because the settlement at issue was expected to generate interest in excess of $50.00 pursuant to

Section 22–103(f), GTE had the client/buyer sign a separate Addendum to the HUD–1 statement in which he agreed that GTE could retain any interest earned on the settlement funds. *See* Joint Exhibit 1 (GTE INC 0087). Thus, Respondent complied with all statutory requirements. Petitioner's argument that section 22–103 requires that GTE must obtain the agreement of *all* the beneficial owners of the trust funds before it can retain the interest on those funds, *see* Amended Petition ¶ 18, ignores the disjunctive use of the word, 'or,' in Section 22–103(f) and the plain meaning of the statute.

"When a statutory provision is 'clear and unambiguous and express[es] a plain meaning,' a court must give effect to the statute as it is written. *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 428 (1995) (citations omitted). Further, where the statute is clear, 'no construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation.' *Giant Food, Inc. v. Dept. of Labor, Licensing and Regulation*, 356 Md. 180, 189, 738 A.2d 856, 861 (1999). If the interpretation offered by Petitioner is accepted, and not only the client/buyer, but *all* 'beneficial owners' would need to agree to an alternative use of the interest earned on settlement trust funds in excess of $50, then the word 'or' would have no meaning in the statute.

"Further, under Petitioner's interpretation of the statute, title agents such as GTE would have to obtain the consent of every conceivable 'beneficial owner' of settlement proceeds such as mortgage companies, banks, lien holders, taxing authorities, utility companies, condominium associations and other entities before retaining the interest earned. Clearly, obtaining this consent from multiple parties would be logistically difficult, if not impossible, given the short time the funds are in the title company's account before closing, and conceivably could render the statute unconstitutional as applied.

"Petitioner contends that it merely seeks to apply the common law principle that 'the interest follows the principal.' In the instant matter, however, the Court must apply the Maryland statutory law that governs this situation, and there is no clear and convincing evidence that Respondent has violated the applicable statute. Further, to adopt Petitioner's position would create two meanings of the statute: one for lawyers, and one for non-lawyers authorized to conduct real estate settlements in Maryland who would not otherwise be restricted from obtaining the interest earned in these transactions. In the instant matter, GTE obtained the consent of GTE's client or buyer, Mr. Gigioli, to retain this interest, and therefore, neither GTE nor Respondent violated the requirements of Section 22–103. Petitioner's attempt to place an additional requirement that Respondent *also* obtain the consent of *any* other 'beneficial owner' of these funds is contrary to the clear, plain reading of the statute, and not specifically supported by any case law, or any ruling of the Maryland Insurance Administration, which is charged with enforcing the statute.

"In sum, GTE and Respondent complied with the plain language of § 22–103 in this case. Accordingly, Petitioner has failed to demonstrate by clear and convincing evidence that Respondent violated any statute or Maryland Rules of Professional Conduct."

## II.

### A.

This Court has original jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 539, 810 A.2d 457, 474–75 (2002). In the exercise of our obligation, we conduct an independent review of the record, accepting the hearing judge's findings of fact unless they are clearly erroneous. *See Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763–64 (2002). We review the hearing judge's proposed conclusions

of law *de novo.* *See Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

The heart of Bar Counsel's complaint against respondent boils down to one contention: that by depositing into his title insurance company's account the interest from funds entrusted to him by clients of the title insurance company, without the express consent of the "beneficial owners," respondent violated the Maryland Rules of Professional Conduct. Respondent does not engage in the active practice of law but instead was acting as a title agent whose main business activity is to conduct real estate settlements, which is governed, pursuant to the Insurance Article of the Maryland Code, by the Commissioner of the Insurance Administration.

A title insurance agent or broker "means a person that, for compensation, solicits, procures, or negotiates title insurance contracts." § 10–101(i)(1) of the Insurance Article.[3] A title insurance agent or broker "includes a person that provides escrow, closing, or settlement services that may result in the issuance of a title insurance contract." § 10–101(i)(2). Before a person may act as a title agent or broker in the State, that person must obtain a license, which issued by the Insurance Commissioner. § 10–103. Respondent received such license from the Insurance Administration. *See* Joint Stipulation of Facts, at ¶ 4. As a duly licensed title agent, respondent became subject to the authority of the Insurance Commissioner who, in the exercise of his authority, could revoke respondent's license or impose other penalties, such as fines or financial restitution, for violations of the Insurance Article. *See* § 10–126.

The Insurance Article contains a detailed structure for the denial, suspension or revocation of a license. Section 10–126 authorizes the Insurance Commissioner to deny, revoke, suspend or refuse to renew or reinstate a license if the applicant

---

**3.** Unless otherwise specified, all future statutory references shall be to Maryland Code (2003 Repl.Vol.) §§ 1–101 to 12–306 of the Insurance Article and to Maryland Code (2002 Repl.Vol., 2003 Cum.Supp.) §§ 13–101 to end of the Insurance Article.

or holder has, *inter alia*, violated the insurance article; misappropriated, converted or unlawfully withheld money belonging to an insurer, agent, broker, beneficiary or insured; or committed fraudulent or dishonest practices in the insurance business. Section 10–131 provides that certain violations of the insurance article constitute a misdemeanor, subject to a fine or imprisonment up to six months or both for each violation. Before a license may be revoked or suspended, the holder must be afforded notice and an opportunity to be heard. § 10–126(a). The actions of the Insurance Commissioner are subject to judicial review. *See* § 2–215.

It is undisputed that the Commissioner has taken no administrative action against respondent, and more specifically, we were advised at oral argument that the Insurance Administration was contacted by Bar Counsel for guidance on the matter but provided none. Bar Counsel urges us to take the initiative and to interpret the Insurance Article in a matter of first impression.

Bar Counsel argues that respondent violated the statute and that as a result, we should discipline him in his capacity as a lawyer. Bar Counsel maintains that respondent violated § 22–103(f) by not securing the consent of any "beneficial owner" before he retained the interest on settlement proceeds, notwithstanding the fact that he secured the consent of his client. Bar Counsel also alleges that the statute requires consent that conformed to the applicable administrative regulation, which mandates that any funds not deposited into a MAHT account must be pursuant to a written agreement that is either (1) a separate agreement or (2) "if part of another agreement, in conspicuous type and initialed by the buyer or beneficial owner." COMAR. 31.16.03.05B.

Respondent argues that although GTE retained all of the interest earned on the settlement proceeds which were received in the Gigioli transaction and maintained by GTE's non-MAHT escrow account, he complied with all the statutory requirements of § 22–103(f). Respondent's argument is twofold: First, respondent argues the statute is written in the

disjunctive and that the use of the word "or" clearly contemplates that consent of either the beneficial owner *or* the client satisfies the statute; and respondent obtained the consent of Mr. Gigioli in the HUD-1 Addendum in accordance with all applicable statutes, a finding of fact by the hearing court to which Bar Counsel does not take exception. Second, respondent argues that obtaining consent from every conceivable "beneficial owner" is not possible and was not contemplated by the statute. As result, he argues the disciplinary petition must be dismissed.

### B.

We shall not proceed down the path suggested by Bar Counsel. While this Court has the authority to proceed in the manner suggested by Bar Counsel in this case of first impression, we think it injudicious under the circumstances to engage in an analysis of the Insurance Article and to construe the statute and the obligations of a title agent *vis-a-vis* the trust account and MAHT account. In order for us to address this issue, we would be required to interpret a provision of the Insurance Article that has not previously been addressed judicially. Specifically, we would need to determine whether § 22-103(f) of the Insurance Article was violated when respondent did not inform the "beneficial owners" of the interest-sweeping provision in the contract. This interpretation of § 22-103(f) is not at all self-evident, which is demonstrated by the lengthy arguments from both parties regarding this issue, and as a consequence, the culpability of respondent's conduct becomes highly questionable.

There is the complete absence of any case or authority on this issue in this State or elsewhere in the country. In addition, the Insurance Commissioner is not a party to these proceedings and thus would be precluded from input on an issue of significant importance to many title insurance agents and brokers practicing in this State. *Cf. Luskin's v. Consumer Protection*, 338 Md. 188, 196, 657 A.2d 788, 791–92 (1995) (noting that "[w]e find that the mere nature of this dispute indicates the need for the interpretation of the facts and the

application of the law to the facts to be done, in the first instance, by the agency with special expertise in the area"); *Fosler v. Panoramic Design, Ltd.,* 376 Md. 118, *, 829 A.2d 271, * (2003) (noting that "when an administrative agency like the Home Improvement Commission is charged with administering a statute, the administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts" (citations omitted)). Under the circumstances presented herein, it makes sense to us to construe the statute in question, as a matter of first impression, in a judicial case other than in the exercise of our role to supervise and discipline attorneys.

Respondent has argued vigorously that he has complied with § 22–103 under any reasonable reading of that statute. He argues the statute does not require consent from both the title agent's client *and* the beneficial owners but from the client *or* the beneficial owners, as indicated by the plain language of the statute. The trial court found that respondent received the consent of his client, Mr. Gigioli, in accordance with the statute, a finding which Bar Counsel does not dispute. Bar Counsel disputes respondent's statutory construction and argues that the statute required consent from the beneficial owners in addition to the clients. What is striking, however, is that neither party can refer us to a single opinion, decision, or action issued by the Insurance Administration on this question; indeed, at oral argument, Bar Counsel informed us that he had contacted the Commissioner of the Insurance Administration but had received no answer to his inquiry on the issue. Instead, they both would have us opine without receiving any input from the agency in charge of administering this statute. We decline to do so.

 Neither a criminal conviction nor a statutory violation is a prerequisite for this Court to proceed with disciplinary action against an attorney. *See, e.g., Attorney Griev. Comm'n v. Childress,* 364 Md. 48, 55, 770 A.2d 685, 689 (2001) (recognizing that a criminal conviction is not necessary to show that attorney's conduct was criminal, but in the absence

of a conviction, Bar Counsel must prove the conduct was criminal by clear and convincing evidence). Nonetheless, under the circumstances of this case, where the basis of Bar Counsel's complaint relates to conduct not connected with the practice of law, it would be inappropriate for this Court to determine in the first instance if respondent violated the Insurance Article, and then to impose sanctions with respect to his license to practice law, particularly where the Commissioner was aware of the conduct and declined to exercise his authority to regulate respondent's conduct as an agent or broker. Accordingly, Bar Counsel's exception to the hearing court's interpretation of § 22–103 is overruled.

Bar Counsel's exception to the hearing court's finding that § 342 of Article 27[4] was not violated is also overruled. Respondent did not commit theft as defined in § 342 of Article 27. Bar Counsel argues that because respondent "had the purpose of depriving the owner of property," *id.*, this intent was sufficient to render his actions theft. We need not decide whether respondent had the intent necessary to satisfy § 342 because his actions do not fall within § 342 in another respect: Respondent never had any unauthorized control over the property as required by the statute because his client consented to respondent's retention of the disputed interest.

Nor did respondent violate Maryland Code (1989, 2000 Repl.Vol., 2003 Cum.Supp.) § 10–306 of the Business Occupations and Professions Article. Bar Counsel excepts to the findings of the hearing court on this matter, but provides no theory explaining why the hearing court's legal analysis was incorrect. We agree with the hearing court, and the exception is overruled.

Bar Counsel alleges that respondent violated Rule 1.15(a), (b), and (c), dealing with a lawyer's safekeeping of

---

**4.** Except where otherwise indicated, all statutory references to Article 27 shall be to Article 27 of the Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), which was referred to by both Bar Counsel and the hearing judge in this case. Article 27 has now been repealed and recodified in the Maryland Code.

property. We agree with the hearing court with respect to Rule 1.15(a) and (c), and find no violation of those provisions because respondent's actions were not in connection with legal representation of a client. Rule 1.15(b), unlike (a) and (c), does not indicate explicitly whether it applies to actions outside the course of legal representation. We do not decide the question of whether 1.15(b), like (a) and (c), contemplates some sort of nexus with legal representation, because the only plausible violation of this provision by respondent arises only if he violated § 22–103(f) of the Insurance Article by not notifying the beneficial owners, which we have already discussed and dismissed. Thus, Bar Counsel's exception is overruled.

Finally, Bar Counsel excepts to the hearing judge's conclusion that respondent did not violate Rule 8.4(b), (c), and (d). We agree with the hearing judge=s analysis that Bar Counsel has not proven by clear and convincing evidence that respondent committed a criminal act that reflects adversely on respondent's honesty, nor has Bar Counsel proven that respondent engaged in conduct prejudicial to the administration of justice or involving dishonesty, fraud, deceit or misrepresentation. The exception is therefore overruled.

There being no violation of the Rules of Professional Conduct, the petition is hereby dismissed.[5]

*PETITION FOR DISCIPLINARY ACTION DISMISSED. COSTS TO BE PAID BY THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.*

WILNER and HARRELL, JJ., concur.

BELL, C.J., dissents.

Concurring Opinion by WILNER, J., in which HARRELL, J., joins.

I concur in the result. I would dismiss the petition because I do not believe that Bar Counsel has presented to us any

---

**5.** Respondent has also filed several exceptions, which we need not address, because, as we have indicated, the petition will be dismissed.

basis for overturning Judge Kahl's conclusion that Mr. Lichtenberg did not violate any of the rules or statutes alleged by Bar Counsel. I write separately only to express my disagreement with the Court's refusal to construe § 22–103(f) of the Insurance Article. When charges are brought against an attorney based on the violation of a statute, even one that is subject to administrative enforcement by some Executive agency, it is the proper and necessary function of this Court to construe the statute in the attorney grievance proceeding, if such construction is necessary to determine whether a violation of the Maryland Rules of Professional Conduct has occurred.

I am not aware of any other instance in which this Court has shied from that responsibility simply because the statute has not previously been construed, or because it may be ambiguous, or because it is also subject to administrative enforcement by an Executive agency. If construction of the statute is relevant to a determination of the issue presented to us in the disciplinary proceeding, it is our duty and responsibility to construe the statute, even if the administrative agency is not a party. We are, in this case, ignoring that duty and responsibility and thus leaving uncertain, for every lawyer who operates or works for a title or settlement company, an issue of grave importance to them. The notion that the Court should construe statutes only when adjudicating disputes in the normal litigation context is unprecedented, unwarranted, and unworkable. If this strange notion is intended as a disguised application of the doctrine of primary jurisdiction, it is, for the reasons stated in my dissent in the companion case of *Attorney Grievance Commission v. Davis*, 379 Md. 361, 842 A.2d 26, 2004 WL 243842 (2004), also Constitutionally inappropriate.

As noted, Judge Kahl found that, by obtaining his client's consent to retain the interest, over $50, on the escrow funds, Mr. Lichtenberg did not violate § 22–103(f). Bar Counsel excepted to the conclusion, but only on the ground that the statute, in his view, requires the consent of not only the client but also of every other person who may qualify as a beneficial

owner. Because the consent requirement is stated in the disjunctive—the client *or* the beneficial owners—and because the term "beneficial owner" is defined to exclude the client, I do not accept Bar Counsel's argument that, in a case such as this, any other person's consent was necessary. There may be situations in which third parties will have a property interest in escrowed funds and will therefore be "beneficial owners" whose consent will be required. This was not such a case, however. No one other than Mr. Gigioli could have had any beneficial ownership with respect to the interest generated by the escrow funds.

Bar Counsel did not except to the conclusion on any other basis, including that Mr. Lichtenberg failed properly to obtain his client's consent. Although, in light of the requirement of COMAR 31.16.03.05, that a client's consent be obtained either in a separate document or in conspicuous type and initialed by the client, and the absence from this record of evidence of compliance with that regulation, a question may be raised whether Mr. Lichtenberg did properly obtain his client's consent, Bar Counsel has not argued a violation on that ground, and it would therefore be inappropriate for us, on this record, to find a violation on that basis. We should, however, address and construe the statute based on Bar Counsel's exception, find no violation on that basis, and not leave Mr. Lichtenberg wondering whether, if he does the same thing tomorrow, he will again be haled before the Attorney Grievance Commission.

Judge Harrell has authorized me to state that he joins in this concurring opinion.

Dissenting Opinion by BELL, C.J.

For the reasons set forth in *Attorney Grievance Comm'n v. Davis,* I respectfully dissent.