976 A.2d 245

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Renard D. JOHNSON

and

Will PURCELL.

Misc. Docket AG No. 11 Sept.Term, 2008.

Court of Appeals of Maryland.

July 21, 2009.

472

Raymond A. Hein, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Com'n of Maryland), for Petitioner.

Melvin G. Bergman, Greenbelt, MD, Michael C. Dawson of The Dawson Group, L.L.C., New Brunswick, NJ, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, Judge.

The Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondents Renard D. Johnson and Will Purcell. Bar Counsel alleged that Respondent Johnson violated Maryland Rules of Professional Conduct ("MRPC") 1.15(b)[1], 5.1(b) and (c)[2], 5.3(b) and (c)[3], and 8.4(a) and (c)[4]

---

1. All rules are cited as they existed at the time of misconduct.

 ### Rule 1.15 Safekeeping Property.
 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 MRPC 1.15(b) is now codified as MRPC 1.15(d). This re-codification did not substantively amend the Rule.

2. **Rule 5.1 Responsibilities of a Partner or Supervisory Lawyer.**
 (b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the rules of professional conduct.
 (c) A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if:
 (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
 (2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

3. **Rule 5.3 Responsibilities Regarding Non-lawyer Assistants.**
 With respect to a nonlawyer employed or retained by or associated with a lawyer:

 \* \* \*

 (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
 (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:
 (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

and that Respondent Purcell violated MRPC 1.15(b) and 8.4(a) and (c). These allegations stemmed from Respondents' involvement in a "lease/buy-back" agreement regarding residential real property.

On December 2 and 3, 2008, Judge Debelius conducted evidentiary hearings in the Circuit Court for Montgomery County. Judge Debelius filed Findings of Fact and Conclusions of Law that included the following findings:

> Respondent, Renard Johnson was admitted to the Bar of this Court on December 17, 1997. He currently maintains his law office in Lanham (Prince George's County). Respondent, Will Purcell was admitted to the Maryland Bar on June 24, 1999. He is also admitted to the District of Columbia Bar and maintains his law office in Washington, D.C. At the time of the events described herein, Respondent Johnson was the owner and president of Apple Title International, LLC ("Apple Title"), which maintained its office in Silver Spring (Montgomery County). Respondent Purcell conducted real estate settlements for Apple Title as an independent contractor.

> \* \* \*

> At the beginning of 2005, Calvin and Christine Barnes ("Mr. & Mrs. Barnes") were the titled owners, subject to a mortgage lien, of a residential property located at 2345 Leyton Court, Waldorf, Maryland 20604 (Charles County). Due to financial difficulties they were experiencing, Mr. & Mrs. Barnes contacted a mortgage broker named Michal

---

(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

**4. Rule 8.4 Misconduct.**
 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 \* \* \*
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

Johnson (not related to Respondent Renard Johnson), then affiliated with Montgomery Capital Corporation, to explore the possibility of refinancing their home mortgage with the additional goal of consolidating some of their other debts. Without fully explaining to Mr. & Mrs. Barnes that he had been unable to obtain their desired refinancing, Michal Johnson brokered a deal by which an individual named Shreco Thompson–Burnett agreed to purchase the Barneses' home. Michal Johnson generated a Sales Contract, dated March 8, 2005, and an Addendum, dated March 28, 2005, containing terms for the sale of 2345 Leyton Court from Mr. & Mrs. Barnes to Ms. Thompson–Burnett. The original Sales Contract provided for a sale price of $360,000.00 and contains the purported signatures of Mr. & Mrs. Barnes as Sellers and Shreco Thompson–Burnett as Purchaser. The Sales Contract Addendum provided for a reduction of the sale price to $352,000.00 and also provided that the settlement date was "extended to 4/4/05." The addendum contains the purported signatures of Mr. & Mrs. Barnes but was not signed by Ms. Thompson–Burnett. Neither Mr. nor Mrs. Barnes actually signed either the Sales Contract or the Sales Contract Addendum.

Michal Johnson arranged one hundred percent (100%) financing for Ms. Thompson–Burnett's purchase of 2345 Leyton Court with first and second mortgage loans of $281,600.00 and $70,400.00, respectively, issued by Home Loan Corporation, doing business as Expanded Mortgage Credit. Michal Johnson referred the pending real estate transaction involving 2345 Leyton Court to Apple Title to conduct settlement. The settlement was scheduled for April 5, 2005 at Apple Title's office in Silver Spring. On April 5, 2005, Mr. & Mrs. Barnes and Ms. Thompson–Burnett, along with Michal Johnson, appeared at the office of Apple Title. The Barneses were greeted by Respondent Renard Johnson upon arrival, expecting to refinance their home, but shortly after their arrival, Michal Johnson explained to the Barneses that he was not able to arrange refinancing for them and he explained to them that he had

arranged for Mr. & Mrs. Barnes to remain in their home at 2345 Leyton Court under a "lease/buy-back" arrangement with Ms. Thompson–Burnett, a buyer he had located. Though the Barnes had never met or had knowledge of Ms. Thompson–Burnett, or contracted with her, a settlement then ensued. The settlement was conducted by Respondent Will Purcell as Apple Title's designated "settlement agent," with Respondent Renard Johnson also present at the settlement.

The settlement was irregular in many respects. The parties were advised that the Barneses would remain in their house and that Apple Title would hold an escrow from the Barneses' sales proceeds equal to one year of rent payments. The plan was for the Barneses' monthly rent to be calculated in an amount equal to the combined amount of Ms. Thompson–Burnett's monthly first and second mortgage payments. There was no documentation of the proposed "lease/buy-back" arrangement between Mr. & Mrs. Barnes and Ms. Thompson–Burnett or of the parties' related rent escrow, nor was such an escrow identified or itemized on Apple Title's HUD–1 settlement form.

Respondent Johnson signed a deed, dated April 5, 2005, by which the 2345 Leyton Court property was conveyed from Mr. & Mrs. Barnes to Ms. Thompson–Burnett. By his signature, Respondent Johnson certified that the deed had been prepared by or under his supervision.

As of April 5, 2005, Cheryl Bruce, a non-lawyer, was employed as Apple Title's office manager. In that position, she participated in preparing settlement documents and handled the disbursement of settlement funds related to the sale of 2345 Leyton Court.

Apple Title generated a document titled "Assignment of Funds," dated inconsistently as "Today's Date: April 5, 2005" and "Executed this 4th day of April, 2005." That document, purportedly signed by both Calvin Barnes and Christine Barnes, authorized the assignment of "all proceeds or, in the alternative $18,000" of the sellers' proceeds at settlement to Michal Johnson. Such a payment was

presumptively improper as an illegal kickback or finders fee in violation of the Real Estate Settlement Procedures Act ("RESPA") and was not identified or itemized on Apple title's HUD–1 settlement sheet.

As settlement agent, Respondent Purcell signed a HUD–1 settlement statement by which he acknowledged the document to be "a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction," i.e., the sale of 2345 Leyton Court.

The settlement statement signed by Respondent Purcell includes a line item, at line 603, of cash due to the sellers (Mr. & Mrs. Barnes) in the amount of $68,203.90, but the only cash disbursement actually made to Calvin and Christine Barnes was in the amount of $21,286.90 by wire transfer on April 6, 2005. A separate wire transfer in the amount of $18,000.00 was made to an account held by Michal Johnson on April 6, 2005, pursuant to the Assignment of Funds (infra). After deducting the sum ($39,-286.90) of the two aforementioned wire transfers, the balance of cash due to the sellers was $28,917.00. Apple Title never disbursed that amount to Mr. & Mrs. Barnes, nor did they prepare any escrow agreement by which they or anyone else would hold any portion of the sellers' proceeds to be applied toward rent payments under the contemplated "lease/buy-back" arrangement. Mr. & Mrs. Barnes understood that the remaining balance of their sellers' proceeds would be held in escrow by Apple Title and applied toward the rent payments they believed were to be made on a monthly basis in an amount equal to Ms. Thompson–Burnett's mortgage payments.

Although Apple Title did not have a signed authorization or other directive from Calvin and Christine Barnes to disburse the remaining balance of their sellers' proceeds, or any portion thereof, to Michal Johnson, Shreco Thompson–Burnett or any other third party or entity, on April 25, 2005, Apple Title issued a check drawn on its real estate escrow account in the amount of $27,168.00, made payable jointly to

Shreco Thompson–Burnett and Michal Johnson. Cheryl Bruce issued that check at the request of Michal Johnson and forwarded it to him. Such funds were never used to pay Ms. Thompson–Burnett's monthly mortgage payments.

At the time of settlement on April 5, 2005, Mr. & Mrs. Barnes, Ms. Thompson–Burnett and Michal Johnson had an undocumented agreement whereby Ms. Thompson–Burnett was not going to occupy the premises at 2345 Leyton Court but instead would be "renting" the property back to Mr. & Mrs. Barnes. **In dereliction of his fiduciary responsibilities to the mortgage lender, Respondent Purcell processed settlement documents containing false information, including an Occupancy Affidavit executed by Ms. Thompson–Burnett as the borrower. In a Closing Certification for the sale of 2345 Leyton Court, Respondent Purcell inaccurately certified that "the HUD–1 Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction."**

As previously stated, the settlement statement did not report the payment of $18,000.00 to Michal Johnson, nor did it report the withholding of $28,917.00 from the sellers' proceeds and the subsequent disbursement of $27,168.00 made by Cheryl Bruce upon Michal Johnson's instruction, nor was the HUD–1 settlement statement ever amended to reflect any such change.

Respondent Johnson had supervisory authority over Respondent Purcell when Purcell acted as Apple Title's agent and over Cheryl Bruce, a non-lawyer employed by Respondent Johnson at Apple Title.

**Both Respondent Purcell and Respondent Johnson were present and had knowledge of the "lease/buy-back" agreement of the parties, which was nothing more than an equity stripping transaction, and knew that it was improper and in violation of the mortgage lender's closing instructions pursuant to which they were entrusted**

monies by the lender. Their acts and conduct in the subject transaction including, but not limited to, Respondent Purcell's certifying false HUD–1 settlement statements, not amending them, submitting knowingly false Affidavits of Occupancy, and Respondent Johnson's knowing acquiescence in and oversight of the same, and his authorization of disbursements which were illegal, unauthorized and/or inconsistent with the HUD–1 settlement statements were dishonest, fraudulent and deceitful.

The Barneses were not provided with copies of any of the settlement documents by Apple Title, and the deed of transfer was not recorded until many months later, in January of 2006.

(Emphasis added.)

Based on these findings of fact, the hearing judge drew the following Conclusions of Law as to Respondent Purcell:

This court finds that Respondent Purcell, by his acts and omissions as set forth herein, engaged in professional misconduct as defined in Maryland Rule 16–701(i) and that he violated the following Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812:

**Rule 1.15 Safekeeping Property.** (pre-July 1, 2005 version)

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

**Rule 8.4 Misconduct.**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

The hearing judge drew the following Conclusions of Law as to Johnson:

This court finds that Respondent Johnson, by his acts and omissions as set forth herein, engaged in professional misconduct as defined in Maryland Rule 16–701(i) and that he violated the following Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812:

**Rule 1.15(b) Safekeeping Property.** (pre-July 1, 2005 version)

\* \* \*

**Rule 5.1 Responsibilities of a Partner or Supervisory Lawyer.** (pre-July 1, 2005 version)

(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the rules of professional conduct.

(c) A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in the law firm in which the other lawyer practices, **or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.**

[Emphasis added.]

**Rule 5.3 Responsibilities Regarding Non-lawyer Assistants.** (pre-July 1, 2005 version)

With respect to a nonlawyer employed or retained by or associated with a lawyer:

* * *

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in the law firm in which the person is employed, **or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.**

[Emphasis added.]

**Rule 8.4.[(a) and (c).] Misconduct.**

* * *

## DISCUSSION

### *Standard Of Review*

In *Attorney Grievance v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008), we articulated the standard of review we employ in deciding attorney grievance matters:

This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. This Court gives deference to the hearing judge's assessment of the credibility of witnesses. Factual findings by the hearing judge will not be interfered with if they are founded on clear and convincing evidence. All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court.

(Citations and internal quotation marks omitted.) Bar Counsel took no exceptions to the findings of fact and conclusions of

law by the hearing judge. Johnson and Purcell took the exceptions discussed below.

## *Lichtenberg* And *Davis*

Both Respondents look to our decisions in *Attorney Grievance v. Lichtenberg*, 379 Md. 335, 842 A.2d 11 (2004), and its companion case, *Attorney Grievance v. Davis*, 379 Md. 361, 842 A.2d 26 (2004) for the general proposition that an attorney acting solely as a title agent cannot be liable for MRPC violations. Purcell contends that "[i]n both *Lichtenberg* and *Davis*, this Court held that an attorney acting as a settlement agent, who did not have any attorney-client relationship with the parties to the settlement, was not subject to disciplinary proceedings under the Rules of Professional Conduct." Johnson also cites *Lichtenberg* and *Davis*, contending that Bar Counsel failed to establish that Johnson was acting as attorney during any relevant time of the real estate transaction. Johnson argues that our holdings in *Lichtenberg* and *Davis* warrant dismissal of the instant matter.

In *Lichtenberg*, title agent Myles Louis Lichtenberg was the president of a real estate title company, Guaranteed Title and Escrow ("GTE"). Though licensed as an attorney, Lichtenberg had never been actively involved in the practice of law. Key to the charges against Lichtenberg was Section 22–103 of the Insurance Article, which required a title insurer or its agents to pool settlement and trust funds from its clients that otherwise would not generate interest of more than $50.00, or an insufficient amount to cover the cost of maintaining a separate account for the proceeds of each individual settlement. *See* Md.Code (2002 Repl.Vol.) § 22–103(b) of the Insurance Article. Section 22–103(c) provided that the interest earned on funds deposited into this account were to be paid to the Maryland Affordable Housing Trust ("MAHT"). Section 22–103(f) provided for the procedures to be followed for settlement proceeds that are expected to generate interest in excess of $50.00 and provided for the creation of a "deposit or investment vehicle" that was "specified by the client or beneficial owner" or "agreed on by the client or beneficial owner and

the title insurer or its agent." GTE maintained both a MAHT account for settlement proceeds generating less than $50.00 in interest, and a non-MAHT account for proceeds generating more than $50.00 in interest.

Judge Irma Raker, writing on behalf of the Court, summarized the parties arguments:

> Bar Counsel argues that respondent violated the statute and that as a result, we should discipline him in his capacity as a lawyer. Bar Counsel maintains that respondent violated § 22–103(f) by not securing the consent of any "beneficial owner" before he retained the interest on settlement proceeds, notwithstanding the fact that he secured the consent of his client. Bar Counsel also alleges that the statute requires consent that conformed to the applicable administrative regulation, which mandates that any funds not deposited into a MAHT account must be pursuant to a written agreement that is either (1) a separate agreement or (2) "if part of another agreement, in conspicuous type and initialed by the buyer or beneficial owner." COMAR. 31.16.03.05B.
>
> Respondent argues that although GTE retained all of the interest earned on the settlement proceeds which were received in the Gigioli transaction and maintained by GTE's non-MAHT escrow account, he complied with all the statutory requirements of § 22–103(f). Respondent's argument is twofold: First, respondent argues the statute is written in the disjunctive and that the use of the word "or" clearly contemplates that consent of either the beneficial owner *or* the client satisfies the statute; and respondent obtained the consent of Mr. Gigioli in the HUD–1 Addendum in accordance with all applicable statutes, a finding of fact by the hearing court to which Bar Counsel does not take exception. Second, respondent argues that obtaining consent from every conceivable "beneficial owner" is not possible and was not contemplated by the statute. As result, he argues the disciplinary petition must be dismissed.

*Lichtenberg,* 379 Md. at 354–55, 842 A.2d at 22–23.

Judge Raker distilled Bar Counsel's argument to its essence: "Bar Counsel's complaint against respondent boils

down to one contention: that by depositing into his title insurance company's account the interest from funds entrusted to him by clients of the title insurance company, without the express consent of the 'beneficial owners,' respondent violated the Maryland Rules of Professional Conduct." *Lichtenberg,* 379 Md. at 353, 842 A.2d at 21. As the Court saw it, if Lichtenberg did not violate the Insurance Article, then he did not violate any rules of professional conduct.

Rather than addressing Bar Counsel's contentions regarding the Insurance article—or the responses proffered by Lichtenberg—we determined that it was "injudicious under the circumstances to engage in an analysis of the Insurance Article and to construe the statute and the obligations of a title agent *vis-a-vis* the trust account and MAHT account" because "[i]n order for us to address this issue, we would be required to interpret a provision of the Insurance Article that has not previously been addressed judicially." *Id.* at 355, 842 A.2d at 23. This analysis would have required a determination of "whether § 22–103(f) of the Insurance Article was violated when [Lichtenberg] did not inform the 'beneficial owners' of the interest-sweeping provision in the contract." *Id.* We observed that this interpretation was "not at all self-evident" and there was a "complete absence of any case or authority on this issue in this State or elsewhere in the country." *Id.*

The Court also noted that the Insurance Commissioner was not a party to the disciplinary proceedings and "thus would be precluded from input on an issue of significant importance to many title insurance agents and brokers practicing in this State." *Id.* at 355, 842 A.2d at 23. We held:

[N]either party can refer us to a single opinion, decision, or action issued by the Insurance Administration on this question; indeed, at oral argument, Bar Counsel informed us that he had contacted the Commissioner of the Insurance Administration but had received no answer to his inquiry on the issue. Instead, they both would have us opine without receiving any input from the agency in charge of administering this statute. We decline to do so.

Neither a criminal conviction nor a statutory violation is a prerequisite for this Court to proceed with disciplinary action against an attorney. Nonetheless, **under the circumstances of this case, where the basis of Bar Counsel's complaint relates to conduct not connected with the practice of law,** it would be inappropriate for this Court to determine in the first instance if respondent violated the Insurance Article, and then to impose sanctions with respect to his license to practice law, particularly where the Commissioner was aware of the conduct and declined to exercise his authority to regulate respondent's conduct as an agent or broker. Accordingly, Bar Counsel's exception to the hearing court's interpretation of § 22–103 is overruled.

*Id.* at 356–57, 842 A.2d at 23–24 (citation omitted, emphasis added).

Without any violation of Insurance Article Section 22–103, the alleged Rule 1.15 violation could not stand:

Bar Counsel alleges that respondent violated Rule 1.15(a), (b), and (c), dealing with a lawyer's safekeeping of property. We agree with the hearing court with respect to Rule 1.15(a) and (c), and find no violation of those provisions because respondent's actions were not in connection with legal representation of a client. **Rule 1.15(b), unlike (a) and (c), does not indicate explicitly whether it applies to actions outside the course of legal representation. We do not decide the question of whether 1.15(b), like (a) and (c), contemplates some sort of nexus with legal representation, because the only plausible violation of this provision by respondent arises only if he violated § 22–103(f) of the Insurance Article by not notifying the beneficial owners, which we have already discussed and dismissed.** Thus, Bar Counsel's exception is overruled.

*Id.* at 357–58, 842 A.2d at 24 (emphasis added). In stark contrast to *Lichtenberg,* the findings of fact and conclusions of law in this case are not dependent on a violation of the Insurance Article, and so our reasons in *Lichtenberg* for refusing to find a violation do not apply.

In *Davis*, Respondent Gary E. Davis was both an attorney in private practice and founder of Allegiance Title & Escrow, Ltd. ("Allegiance Title"). Davis did not attend or conduct any settlements on behalf of the company, but did contribute to the operation of Allegiance Title by reviewing and signing deeds. Davis set up a MAHT account for funds less than $150,000, as these funds were likely to generate less than $50.00 in interest or the cost of administering a separate account. Deposits of $150,000 or greater were to be deposited into the company's existing escrow account. Monies held in the existing escrow account were transferred or "swept" by the Bank at the end of each banking day into a separate interest bearing account maintained for the benefit of the company. Davis admitted that the beneficial owners were not given notice and their consent was not acquired prior to Allegiance Title depositing trust money into its escrow account and the sweep account.

The Attorney Grievance Commission initiated a disciplinary proceeding against Davis, alleging that as an attorney, his title insurance company could not retain the benefit of the interest earned in the sweep accounts because this constituted a violation of Insurance Article Section 22–103. The hearing judge accepted Bar Counsel's argument that Allegiance Title's retention of the interest earned from their sweep account violated the Insurance Article since the "beneficial owners" within the meaning of the statute did not have knowledge of the funds allocation, nor had they consented to Allegiance Title's retention of the interest. The hearing judge, nonetheless, found no misconduct under the MRPC.

Judge Raker, again writing for the Court, stated that *Davis* presented the same issue that the Court addressed in *Lichtenberg* and that the facts in the two cases were "in all relevant aspects, similar." *Davis*, 379 Md. at 379–80, 842 A.2d at 37. "Here, as in *Lichtenberg*, Bar Counsel essentially complains that respondent did not get the consent of the 'beneficial owners' before he retained the interest in the accounts." *Id.* at 380, 842 A.2d at 37. We employed the same reasoning in *Davis* that we did in *Lichtenberg*—that "we discipline attor-

neys for violation of Rule 8.4 when it is clear that a law has been violated, even if there is no criminal conviction, but not when such a violation is unclear[.]" *Id.*, 842 A.2d at 37–38. We concluded:

> This case differs from those cases in which we proceeded with disciplinary actions in the absence of a criminal conviction where, for example, the lawyer has failed to file or pay income taxes. There the violation is clear but the prosecution is uninitiated. Here, not only is the violation vague and unsubstantiated, but the presence and the advice of the regulating authority, an agency charged with protecting the public, is strikingly absent from any part of these proceedings. In this respect, this case is no different from *Lichtenberg* and will be dismissed.

*Id.* at 381, 842 A.2d at 38. Again, our refusal to find a MRPC violation in *Davis* turned on Davis's failure to violate a specific MRPC rule because of the absence of any substantiation of an Insurance Article violation.

Respondents differ with our interpretation of *Lichtenberg* and *Davis* and find support for their views in *Attorney Grievance v. Goff,* 399 Md. 1, 922 A.2d 554 (2007). *Goff* involved a trust account overdraft by an attorney who was also licensed as a title agent. Respondent Goff relied on *Lichtenberg* and *Davis* to bolster his argument that because he was not practicing law, he was not subject to disciplinary action. Overruling this exception, we distinguished *Lichtenberg* and *Davis* on the grounds that Goff had not been charged by bar counsel in his capacity as a title agent like the respondents in *Lichtenberg* and *Davis* had:

> This case is nothing at all like *Lichtenberg* and *Davis.* In neither of those cases was it contended, or even arguable, that the attorneys in those cases were practicing law. Indeed, in *Lichtenberg,* the Court clearly stated the context for its holding:
>
> > "The heart of Bar Counsel's complaint against respondent boils down to one contention: that by depositing into his title insurance company's account the interest from funds

entrusted to him by clients of the title insurance company, without the express consent of the 'beneficial owners,' respondent violated the Maryland Rules of Professional Conduct. Respondent does not engage in the active practice of law but instead was acting as a title agent whose main business activity is to conduct real estate settlements, **which is governed pursuant to the Insurance Article of the Maryland Code, by the Commissioner of the Insurance Administration."**

379 Md. at 353, 842 A.2d at 21. *Davis,* of course, involved the same issue. 379 Md. at 380, 842 A.2d at 37. **At issue here is not the insurance company account, rather the respondent's escrow account.** Also, here, the respondent undertook the representation of a client; that is not disputed and it was this representation that was the genesis of the issue, with the resolution of which the respondent was subsequently charged and which he was pursuing when the charged conduct occurred.

*Id.* at 30, 922 A.2d at 570–71 (emphasis added). Respondents contend that *Goff* reinforces their argument that the key to our holdings in *Lichtenberg* and Davis was that the respondents were not practicing law. While it is true that the question of whether their conduct constituted practicing law was a component of our holdings in these cases, this does not absolve either Johnson or Purcell from liability under MRPC 1.15(b), 8.4(a) and (c), or Johnson from liability under MRPC 5.1(c) or 5.3(c). As we previously discussed in *Lichtenberg*— and reiterated in *Goff*—*Lichtenberg* turned on the respondent's alleged violation of *the Insurance Article.* In *Lichtenberg,* we did not decide "the question of whether 1.15(b), like (a) and (c), contemplates some sort of nexus with legal representation, because the only plausible violation of this provision by respondent arises only if he violated § 22–103(f) of the Insurance Article[.]" *Lichtenberg,* 379 Md. at 358, 842 A.2d at 25. Insurance Article Section 22–103 is not involved here, and different violations, based on different actions by Johnson and Purcell, have been alleged and proven.

## MRPC 1.15(b)

We addressed the scope of Rule 1.15(b) in *Attorney Grievance v. Clark*, 363 Md. 169, 767 A.2d 865 (2001). In *Clark*, the respondent admitted to failing to timely file withholding tax returns and/or to remit the taxes reportedly withheld and to hold in trust those taxes; we determined that these violations fell within Rule 1.15(b). While it is true that the tax violations in *Clark* were still related to the attorney's law practice, we held, more generally, that Rule 1.15(b) encompassed a broad scope of attorney conduct:

> Rule 1.15(a) and (c) are specific to a lawyer's duties "in connection with a representation" while **Rule 1.15(b) refers generally to a lawyer's duty to act with the care of a professional fiduciary for any property held by an attorney on behalf of third persons.** As articulated in the preamble to the Maryland Rules, "[a] lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs." *See* MARYLAND RULES OF PROFESSIONAL CONDUCT, Preamble. As an officer of the court, the lawyer is a public servant; and as a public servant, the lawyer has a special responsibility to act in the public interest.

*Id.* at 182, 767 A.2d at 872 (emphasis added).

■ Because MRPC 1.15(b) has been interpreted by this Court to apply "generally" to the fiduciary duties connected with an attorney's holding of "any property[,]" the practice of law is not a prerequisite for an attorney to have violated MRPC 1.15(b). Accordingly, we overrule Johnson and Purcell's exception based on the "*Lichtenberg/Davis* defense" with regard to MRPC 1.15.

### Purcell's Additional MRPC 1.15(b) Exception

■■ Purcell also contends that the hearing judge erred in finding that he violated MRPC 1.15(b) because he had never held any property of a client or third party to the transaction. MRPC 1.15(b) contemplates scenarios in which a lawyer re-

ceives funds from a client or third person. An attorney is in violation of this Rule when the attorney fails to promptly notify the client or third person, deliver funds to the client or third person, or render a full accounting regarding such property. Bar Counsel alleges a delivery violation here because, *inter alia*, the full disbursement amounts indicated on the HUD–1 were not delivered to Mr. and Mrs. Barnes. According to Purcell's counsel, he is not in violation of MRPC 1.15(b) because his "role at settlement was essentially ministerial, primarily encompassing the role of answering any questions about the line items on the HUD–1, and securing the signatures of all the parties subscribing to the HUD-1, and lastly placing his signature on the HUD-1 after all others had approved and signed it." The record demonstrates, however, that Purcell, beyond "ministerial" tasks, undertook fiduciary responsibilities. Purcell signed a document entitled "Closing Certification[,]" which stated, pertinently:

> To the best of my knowledge, the HUD–1 Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received **have been or will be disbursed by the undersigned as part of the settlement of this transaction.**

(Emphasis added.)

Bar Counsel called David Kochanski as an expert witness with regard to real estate transactions and settlement procedures. Kochanski was asked to explain the "have been or will be disbursed by the undersigned as part of the settlement of this transaction" language in the Closing Certification. He responded that it means "[t]he settlement attorney is receiving these funds in trust for the purposes that are set forth on the settlement statement, and it's an agreement by the settlement attorney—and it's a guarantee, really—that the funds are going to be disbursed in this manner." Kochanski concluded that Purcell "undertook the responsibility to receive these funds from the lender and also from the buyer in this case and disburse them in accordance with the HUD–1 Settlement Statement."

Purcell's signature paired with this testimony provides an ample predicate for the hearing judge's finding that he violated MRPC 1.15(b). By signing this document, Purcell assumed the role of a fiduciary for Mr. and Mrs. Barnes's funds and the corresponding responsibility for the delivery of those funds, per the requirements of MRPC 1.15(b). The subsequent misappropriation of these funds evidences an abdication of Purcell's duties in this regard. Purcell's exception is overruled.

### *Johnson's Additional MRPC 1.15(b) Exceptions*

Johnson takes exception to the hearing judge's finding that "[t]he parties were advised that the Barneses would remain in their house and that Apple Title would hold an escrow from the Barneses' sales proceeds equal to one year of rent payments." In support of this contention, Johnson points to Cheryl Bruce's testimony that she did not recall whether she had discussions with Mrs. Barnes about setting up an escrow account and that Johnson answered "no" when asked, "Were you privy to any discussed proposal with Ms. Thompson–Burnett that involved terms that included the sale of property with a leaseback to the Barnes for a 12–month period?" Johnson also points to the report issued by Bar Counsel's Investigator ("Investigative Report"). The investigator wrote that Michal Johnson told him, "[N]either respondent Will Purcell nor Renard Johnson conducted any discussions with the parties concerning the sales agreement, the lease agreement, or the Barnes option to buy back the property on the day settlement was conducted."

This exception boils down to a credibility contest between Respondent Johnson and Mrs. Barnes, who testified that Johnson told her that Apple Title would hold her money in escrow "for the mortgage to be paid for the whole year." Maryland Rule 16–759(b)(2)(B) provides that the Court of Appeals "shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses" and we have held that "[d]eference is accorded the hearing judge's findings because, having seen first-hand the demeanor of the

witnesses, the hearing judge is in the best position to assess their credibility." *Attorney Grievance v. Kimmel,* 405 Md. 647, 667, 955 A.2d 269, 281 (2008). Here, we defer to the hearing judge's decision to believe Barnes and not Johnson. We are not persuaded that Cheryl Bruce's testimony or the hearsay statement by Michal Johnson, who did not testify at the hearing, reveals error by the hearing judge. This exception is overruled.

Johnson also takes exception to the hearing judge's finding that Mr. and Mrs. Barnes understood that the remaining balance of their sellers' proceeds would be held in escrow by Apple Title and applied toward the rent payments in an amount equal to Ms. Thompson–Burnett's mortgage payments. Johnson argues that, because Mr. Barnes did not testify, there is not sufficient evidence for the hearing judge to have found what both he and Mrs. Barnes understood. Mrs. Barnes frequently referred to she and Mr. Barnes as a married unit in her testimony: "**we** had no knowledge of [the lease/buyback] until **we** came to Apple Title Company." (Emphasis added.) With regard to the lease/buyback, Mrs. Barnes testified she and her husband had a discussion about the deal: "**we** didn't want to get in a . . . bind like that . . . . **and my husband discussed it** . . . . it kind of took a toll **on both of us.**" (Emphasis added.) Mrs. Barnes also made it clear that she and her husband jointly responded to the proposed lease/buy back agreement: "**It was up to my husband and myself to do it,** but **we** figured that it's kind of too late." (Emphasis added.) We again defer to the hearing judge's decision to believe this testimony, and we overrule the exception.

Johnson also argues that Cheryl Bruce testified that she did not have conversations with Mr. and Mrs. Barnes about the escrow arrangement. This testimony from Bruce is immaterial because the discussion of the arrangement occurred between Mr. and Mrs. Barnes, Purcell, Johnson, and Michal Johnson, and Cheryl Bruce was not a participant.

Johnson takes exception to the hearing judge's finding that

Although Apple Title did not have a signed authorization or other directive from Calvin and Christine Barnes to disburse the remaining balance of their sellers' proceeds, or any portion thereof, to Michal Johnson, Shreco Thompson–Burnett or any other third party or entity, on April 25, 2005, Apple Title issued a check drawn on its real estate escrow account in the amount of $27,168.00, made payable jointly to Shreco Thompson–Burnett and Michal Johnson.

Johnson contends that Apple Title acted properly in disbursing the money to Thompson–Burnett because it was rightly her property pursuant to the escrow arrangement to which Mr. and Mrs. Barnes agreed. Johnson cites Mrs. Barnes's testimony indicating that she expected $27,000 to go to Thompson–Burnett. He also points to a letter from the Barnes's counsel [5] sent after Michal Johnson cleaned out the account. This letter requested that the $27,000 be given to Thompson–Burnett.

These proffers by Johnson do not go to the heart of his exception to the rather narrow finding that Apple Title did not have a *signed* authorization or *other directive*. There was no document directing the $27,000 to be held in escrow. Nor does the HUD–1 form reflect an assignment of funds to Thompson–Burnett to be held in escrow or otherwise. Cheryl Bruce testified that there was an assignment of funds document in the Barnes file that indicated $27,000 was to be paid to Thompson–Burnett, which caused her to withhold these funds from Mr. and Mrs. Barnes. When asked what happened to this document, Bruce responded, "That, I don't know." The record contains no written agreement regarding the escrow account and there is no testimony from Mrs. Barnes that she directed this action, merely that she understood it would be implemented. We overrule this exception.

██ We agree with the hearing judge's conclusion that because of Johnson's supervisory and managing position with Apple Title, he violated MRPC 1.15(b). There was ample

---

**5.** This attorney also represented Thompson–Burnett.

evidence in the record to support this finding. Kochanski testified:

> Mr. Renard Johnson ... was responsible for all of the disbursements by Apple Title by being the manager of Apple Title. Apple Title undertook the responsibility to disburse funds in accordance with the HUD–1, and their employees didn't do so. And, frankly, I can't tell from this documentation why they made a lot of these disbursements. There was certainly nothing in writing here that satisfies some of them, and even when there is something in writing, it's not what is customarily used and it's not customary for that purpose.

> Apple Title took in a great deal of funds that they didn't account for in accordance with HUD–1. It appears they took in money that they kept, that was supposed to be used for other purposes, was never returned to the people that it was supposed to go to. The funds were taken in in trust and that trust was breached.

Kochanski elaborated that there was evidence of Johnson's culpability in his answers to interrogatories:

> Interrogatory No. 10, "If you contend you did not have supervisory authority over the activities of Will Purcell in connection with the April 5th, 2005, settlement conducted on the sale of 2345 Leyton Court, state the facts upon which you rely to support your contention." Answer to No. 10, "He was a licensed settlement officer and licensed attorney contracted to conduct settlements. **The ultimate responsibility was on me based on owning the company.**"

> \* \* \*

> Interrogatory 21, "Set forth the reason, reasons, why Apple Title issued a check drawn on its real estate escrow account on April 25, 2005, payable to Shreco Thompson–Burnett and Michal Johnson in the amount of $27,168 as averred in paragraph 26 of the PDRA. Also, state (a) whether you approved the issuance of said check and (b) the information, if any, you were given by Cheryl Bruce or any

other Apple Title employee concerning issuance of the check."

Answer, "Ms. Bruce indicated that she had spoke with Burnett several times by phone, and she indicated to me that there was money in escrow for this particular transaction and that all of the parties involved wanted the money to be disbursed to Burnett and Johnson. **Based on the information given to me, I approved the issuance of the check.**"

(Emphasis added.)

Interrogatory No. 21 reinforced Kochanski's testimony that Johnson had ultimate control over the funds "and in this case they weren't disbursed without his permission and consent." The hearing judge's finding that Johnson violated MRPC 1.15(b) is supported by clear and convincing evidence based upon our independent review of the record and we overrule Johnson's exceptions.

### MRPC 8.4

 MRPC 8.4(c) prohibits conduct that is either dishonest, fraudulent, deceitful, or involves misrepresentation. Like MRPC 1.15(b), 8.4(c) is a general provision that can be violated even when the conduct did not occur during the practice of law. *See, e.g., Attorney Grievance v. Floyd,* 400 Md. 236, 254, 929 A.2d 61, 71 (2007) ("Respondent engaged in 'conduct involving dishonesty, fraud, deceit, or misrepresentation' in violation of Rule 8.4(c) when she concealed the nature of her relationship with [her husband] in order to obtain a higher starting salary with the Federal Trade Commission."); *Attorney Grievance v. Sweitzer,* 395 Md. 586, 597, 911 A.2d 440, 447 (2006) (finding that Sweitzer violated MRPC 8.4(c) by making two misrepresentations—presenting the Gift Certification Form to the MVA for a vehicle he purchased at auction and misrepresenting that he had his former wife's authority to sign the Gift Certification Form on her behalf—in an effort to avoid payment of a vehicle sales tax and inspection fee); *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 382, 386, 773 A.2d 463, 465, 469 (2001) (finding MRPC 8.4(c) violation when

respondent, while working outside of the profession of law, embezzled money from her employer). MRPC 8.4(c) applies to Johnson and Purcell whether or not they were actively engaged in the practice of law at the time of their misconduct.

### Purcell's MRPC 8.4 Exceptions

■■ With respect to a violation of Rule 8.4(c), Purcell contends that "the only nexus between this conclusion in [sic] the hearing court's Finding of Fact and Conclusions of Law appears to arise from the signature certification by the Respondent as to the accuracy of the HUD–1." Purcell argues that he had nothing to do with the entire transaction, short of appearing at settlement and answering questions that arose from any of the items that were enumerated in the HUD–1. Purcell maintains that "[e]ven presuming that [Purcell] was aware of the 'lease/buy-back,' as found by the hearing court, that would still have no impact on Respondent's responsibilities as a settlement agent."

As previously discussed with respect to Purcell's exceptions to the MRPC 1.15 violation, Purcell did have substantial fiduciary obligations that went beyond merely ministerial tasks related to the closing. By signing the HUD–1 and the settlement statement, Purcell took on responsibility for the fraudulent transaction. The HUD–1 was a clear misrepresentation with respect to the distribution of funds. It did not report the payment of $18,000.00 to Michal Johnson. Nor did it report the withholding of $28,917.00 from the sellers' proceeds and the subsequent disbursement of $27,168.00 made by Cheryl Bruce upon Michal Johnson's instruction.

■ In addition, Purcell violated MRPC 8.4(c) by knowingly utilizing at the closing a false Statement of Occupancy signed by Thompson–Burnett. Kochanski testified:

[T]he occupancy affidavit . . . essentially says that the buyer of the property will move in the property within . . . 60 days after closing and will occupy the property for one year. The purpose for that is that loans were being made for people to occupy the property at a certain rate and, if you're

buying a piece of property to rent out to others, then you would have a higher interest rate and you'd never get 100 percent financing[.]

\* \* \*

What happened here is that the parties defrauded the lender. And, from the testimony I've heard today, it appears that everyone knew at closing, when these documents were being signed, that the buyer had no intention of occupying the property.

The evidence in the record shows that Purcell conducted the closing where the lease/buyback arrangement was discussed with Mr. and Mrs. Barnes with the understanding that they would remain in their home. Indeed, it was at the closing that Thompson–Burnett signed the false occupancy affidavit, misrepresenting her intention to occupy Mr. and Mrs. Barnes's home.

Purcell also excepts to the hearing judge's finding that he violated MRPC 8.4(a). This exception depends on the success of his defense to the charge that he violated MRPC 1.15, which we have rejected. In the words of his exception: "Rule 8.4(a) is the Rule which essentially says that it is a violation of the Rules of Professional Conduct to violate a Rule of Professional Conduct. If this Court overrules Respondent's contention that this case should be dismissed, then the effect of this Rule should be subsumed in any other violation found." Because we do find Purcell to have violated MRPC 1.15, this exception is overruled.

### Johnson's MRPC 8.4 Exceptions

Johnson takes exception to the hearing judge's finding that "[t]he addendum contains the purported signatures of Mr. & Mrs. Barnes but was not signed by Ms. Thompson–Burnett. Neither Mr. nor Mrs. Barnes actually signed either the Sales Contract or the Sales Contract Addendum." The Sales Contract Addendum that was entered into evidence is blank under the purchaser section, confirming the hearing judge's finding that Thompson–Burnett did not sign the addendum. Regard-

ing the Sales Contract Addendum, Mrs. Barnes testified as follows:

> [Bar Counsel]: [T]here's a document titled "Sales Contract Addendum." Is that your signature on that document?

> [Mrs. Barnes]: No, that doesn't look like my signature either, and again, it doesn't look like my husband.

Johnson's exception states:

> Complainant Mr. Barnes was present at the hearing and could have easily been asked by Petitioner whether or not he signed the contract. As far as Mrs. Barnes, she could not remember signing anything although we were sure that she signed various documents at closing. When asked by Petitioner, "Now, before that date, had you signed any papers presented to you?" She responded, "Yes. Michal [Johnson, loan officer] came to my job. I was working for, I was a contractor for the U.S. Postal Service ... I signed something."

Johnson's excerpt from this testimony is misleading. Mrs. Barnes's response in its entirety read as follows:

> Yes. Michal came to my job. I was working for, I was a contractor for the U.S. Postal Service. He said that if, it's going—he told us, told me that it would cost $18,000 to refinance. So, I asked him, I said, "What if you don't"—he said, "We're going to refinance. If you don't refinance, then you don't have to pay the 18,000." So, he said, "You and your husband have to sign this paper." I signed something. When I brought it home to my husband, he said no. He said, "I'm not paying this guy $18,000 for refinance the house." So, he never signed any papers.

Johnson also omits the following critical testimony elicited from Mrs. Barnes by Mr. Purcell on cross-examination regarding this document:

> [Purcell]: But ... before you went home to your husband, you agreed with Mr. Johnson that you would pay the 18,000? Was that your testimony?

[Mrs. Barnes]: No, I didn't really agree with him. I told him I had to discuss this with my husband.

[Purcell]: Was it your earlier testimony that you signed something, noting your agreement?

[Mrs. Barnes]: Well, I signed, but he never got that piece of paper that I signed.

The hearing judge heard this testimony from Mrs. Barnes and was in the best position to determine its veracity. We overrule this exception.

 Johnson takes exception to the hearing judge's finding that "[t]he settlement was conducted by Respondent Will Purcell as Apple Title's designated 'settlement agent,' with Respondent Renard Johnson also present at the settlement." This exception is another credibility contest between Johnson, who testified that he did not attend the settlement, and Mrs. Barnes, who testified that he did. Johnson attempts to discredit Mrs. Barnes's testimony by pointing to the fact that she could not remember the address of the subject property. Johnson also identified testimony from Mrs. Barnes in which she stated that Michal Johnson told her about the change in plans from a refinance to a sale while she apparently told the Bar Counsel's Investigator that it was Respondent Johnson who broke the news. We again defer to the hearing judge's ability to evaluate live testimony from witnesses. We overrule this exception.

Johnson takes exception to the following finding regarding the Assignment of Funds document:

That document ... authorized the assignment of 'all proceeds or, in the alternative $18,000' of the sellers' proceeds at settlement to Michal Johnson. Such a payment was presumptively improper as an illegal kickback or finders fee in violation of the Real Estate Settlement Procedures Act ("RESPA") and was not identified or itemized on Apple title's HUD–1 settlement sheet.

Johnson argues:

[N]either the Petitioner nor the Circuit Court presented authority or code citation under RESPA that "[such a

payment was presumptively improper]". Bar Counsel in its Petitions for Disciplinary or Remedial Action never alleged any violation of RESPA or any other code. The Circuit Court essentially used a brief mention of RESPA by Bar Counsel's expert witness to form a very reckless and damaging conclusion.

The hearing judge concluded that the Assignment of Funds constituted a violation of RESPA based on the following testimony from Kochanski:

> I think there was testimony here today that Michal Johnson asked for an $18,000 finder's fee and required that of Ms. Barnes, in addition to being in the report. A finder's fee or a referral fee is something that is violative of Section 8(a) of RESPA, which provides that there shouldn't be any referral fees for the referral business.
>
> \* \* \*
>
> [F]rom the report, it appeared to reference that there was an agreement that that $18,000 fee was going to be split with ... Thompson–Burnett, which, again, is a referral fee for her doing nothing; and it's also a violation, I believe, under 8(b), which prohibits splitting fees, other than ... for services actually performed[.]

Kochanski, however, relied on the Investigative Report that was not entered into evidence at the hearing. Maryland Rule 5–703(a) provides, in relevant part

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, **the facts or data need not be admissible in evidence.**

(Emphasis added.) The hearing judge apparently relied on this Rule.[6] The Maryland Rules of Evidence permit expert

---

**6.** [The Court]: "[A]s an expert, he's entitled to rely on ... hearsay evidence and he did. He said that that [report] was one of the things that he considered in forming his opinion."

witnesses to present testimony based on evidence that would be otherwise inadmissible.

The problem is that the Investigative Report was not only the foundation for Kochanski's opinion that the Assignment of Funds violated RESPA, but also provided the only factual testimony regarding the existence of the fee-splitting agreement. There was nothing entered into evidence that described the fee splitting arrangement and neither Michal Johnson nor Thompson–Burnett testified. Furthermore, Kochanski testified that there were no documents indicating that Apple Title knew about a fee-splitting scenario prior to settlement or immediately following settlement.

▉▉▉ In *Hartless v. State,* 327 Md. 558, 580–81, 611 A.2d 581, 592 (1992), we held:

> The Court of Special Appeals correctly described as a "circular" or "bootstrapping" argument the defendant's attempt to create an entire scenario of what took place at the time of the murder by evidence not admissible for any reason other than to explain an [expert] opinion which was based upon that scenario. **If the evidence is inadmissible for substantive purposes, it cannot be used to create the foundation of basic facts upon which the opinion necessarily turns.**

(Emphasis added.) We partially sustain this exception because we believe that the hearing judge committed error in mentioning a RESPA fee-splitting violation. We hold that this error was harmless, in an attorney discipline context, because the hearing judge did not say that Johnson or Purcell violated RESPA. The hearing judge made it clear that the MRPC 8.4 violation relevant to this exception occurred when the $18,000 "was not identified or itemized on Apple title's HUD–1 settlement sheet." This assertion is adequately supported by the record.

### Johnson's MRPC 5.1 Exception

▉▉▉ Respondent Johnson takes exception to the hearing judge's finding that "Johnson had supervisory authority over

Respondent Purcell when Purcell acted as Apple Title's agent." Johnson cites the hearing judge's finding that "Respondent Purcell conducted real estate settlements for Apple Title as an independent contractor." Johnson argues: "[I]t is reversible error that the Circuit Court properly concluded that Respondent Purcell was an independent contractor as a settlement agent, but inconsistently ruled that Respondent Johnson had supervisory authority over Respondent Purcell as an attorney." In addition, although not briefed by the parties, the question was raised during oral argument before this Court as to whether MRPC 5.1 or 5.3 require a nexus to the practice of law. In the instant matter, it is apparent from the record that Purcell was acting as an attorney and Johnson was not. According to the HUD–1, "Will Purcell, Esq." received "Attorney's Fees" in this matter and Cheryl Bruce testified that Purcell was listed as an attorney in this matter. Although Johnson signed the deed as "Renard D. Johnson, Esq."; and the deed stated it was prepared "BY OR UNDER THE SUPERVISION OF THE UNDERSIGNED, AN ATTORNEY DULY AUTHORIZED TO PRACTICE BEFORE THE COURT OF APPEALS OF MARYLAND[,]" there is no evidence in the record that Johnson was acting in an attorney capacity other than in the act of signing the deed.

Neither Johnson's status as a non-attorney in this matter nor Purcell's independent contractor status, however, absolves Johnson from liability for Purcell's actions. MRPC 5.1 provides, in relevant part:

(c) A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved[.]

Comment 4 to this rule explains: "Paragraph (c) expresses a **general** principle of personal responsibility for acts of another." (Emphasis added.) Therefore a violation of MRPC 5.1(c) can occur whether or not the attorney had an employer-employee relationship with the attorney who committed the

underlying violation and regardless of whether he or she was acting as an attorney at the time.

Johnson had the ultimate responsibility and managerial authority for transactions processed by his company, including the one before us. Johnson both had knowledge of the conduct at issue and ratified the transaction. Kochanski established during his expert testimony that Johnson had previously acknowledged that the "ultimate responsibility" was on him "based on owning the company." We overrule this exception.

### Johnson's MRPC 5.3 Exception

Johnson takes exception to the hearing judge's application of MRPC 5.3 as it related to Cheryl Bruce. Johnson contends that because Bruce held a supervisory position at Apple Title and had discretion regarding the disbursement of funds, he is not responsible for her conduct in this matter. Johnson also notes that Bruce testified that she did not consult with Johnson prior to disbursing any funds in question related to this transaction. MRPC 5.3 provides, in relevant part:

> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:
>
> (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved[.]

In this instance, Bruce distributed funds in a manner contrary to the HUD–1; it was this action that proved to be the genesis of the instant MRPC 1.15 and 8.4 violations for which we have held Respondent Johnson responsible. We have made clear that "[a]n attorney may not escape responsibility to his clients by blithely saying that any shortcomings are solely the fault of his employee." *Attorney Grievance Comm'n v. Goldberg*, 292 Md. 650, 655, 441 A.2d 338, 341 (1982). Likewise in the instant matter, Johnson cannot shift the responsibility for the HUD–1 misrepresentations and overall fraud committed by Apple Title to an employee when he was clearly in a position

of management and authority. Again, Kochanski provided expert testimony regarding this matter:

> Mr. Johnson, as the owner and chief executive officer of Apple Title, exercised supervisory authority and responsibilities for Cheryl Bruce and the funds that she disbursed, both as a legal secretary and as office manager. To the extent she made disbursements, whether he monitored that or not, he had the ultimate responsibility for what she did with the money that was entrusted to the attorneys and Apple Title.

We are not persuaded that the fact that Johnson was not "practicing law" at the time of this offense is an outcome determinative factor. Johnson was a licensed attorney who, in the course of his professional duties, ratified conduct by his employee that, had he engaged in it directly, would most definitely have constituted a violation of MRPC 1.15(b) and 8.4(c), neither of which require violations to have occurred during the practice of law.

### *Summary Of Violations*

In sum, we conclude that Purcell violated MRPC 1.15(b) and 8.4(a) and (c) and that Johnson violated MRPC 1.15(b), 8.4(a) and (c), 5.1(c) and 5.3(c). We turn next to the question of appropriate sanctions.

### Sanctions

Bar Counsel proposes disbarment for both Johnson and Purcell. Both Johnson and Purcell preliminarily argue that this case should be dismissed because of our holdings in *Lichtenberg* and *Davis;* they then propose alternative sanctions should we reject this argument. As previously discussed, we do not accept the Respondents' *Lichtenberg* and Davis arguments, so we turn to their alternative sanction proposals. Johnson proposes the following sanctions: a written reprimand in conjunction with the requirement of CLE in real estate settlements, a voluntary 60–day suspension, or a 30–day suspension. Respondent Purcell argues that "a reprimand might be appropriate, but even that may not be war-

ranted in the absence of any previous guidance from this Court beyond *Lichtenberg* and *Davis*."

We shall disbar both Johnson and Purcell. In determining this sanction, the underlying dishonesty and fraud demonstrated by Johnson and Purcell are of paramount importance. We have held that "acts of dishonesty, fraud, or misleading behavior may warrant a sanction of disbarment." *Attorney Grievance v. Siskind,* 401 Md. 41, 75, 930 A.2d 328, 348 (2007). In *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001), we explained:

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.
>
> Disbarment ordinarily should be the sanction for intentional dishonest conduct.

Johnson and Purcell were both parties in a fraudulent, equity-stripping transaction. Purcell, as a signatory on the HUD–1, and Johnson, in his management capacity at Apple Title, had fiduciary duties to distribute the funds to which Mr. and Mrs. Barnes were entitled in a manner consistent with the forms that Apple Title prepared. Instead, they funneled the money into an undocumented and fraudulent lease/buyback arrangement. In facilitating this transaction, they utilized a fraudulent occupancy statement. These acts, as well as Johnson's acts as a supervisor of Purcell and Apple Title's staff, constituted clear misappropriation of Mr. and Mrs. Barnes's funds as well as misrepresentations about the nature of the agreement and the way that money would be distributed. The hearing judge found no mitigating factors and the Respondents present us with no convincing reason why disbarment is not warranted in this matter.

**IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS,**

PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RENARD D. JOHNSON AND WILL PURCELL IN THE SUM OF THESE COSTS.